Alfredo **MONREAL** Jr., Appellant,

v.

The **STATE** of Texas.

No. 2289–01.

Court of Criminal Appeals of Texas, En banc.

March 12, 2003.

20. *Id.*

21. Quinn, 74 CHI.-KENT L.REV. at 713.

22. *Id.*

Christopher A. Curtis, Fort Worth, for Appellant.

Debra Ann Windsor, Asst. DA, Fort Worth, Matthew Paul, State's Atty., Austin, for State.

### OPINION

HOLCOMB, J., delivered the opinion of the Court, in which KELLER, P.J., and MEYERS, PRICE, WOMACK, KEASLER, HERVEY, and COCHRAN, JJ., joined.

This case presents the question of whether a valid, non-negotiated waiver of appeal prevents a defendant from appealing any issue without the consent of the trial court. We hold that it does.

Alfredo Monreal Jr. pled guilty, without a plea bargain, to the charge of aggravated robbery. A jury assessed his punishment at eighteen years confinement. On January 5, 2001, the trial court rendered judgment in accordance with the jury's verdict. On January 12, 2001, in open court, Monreal, for reasons not apparent from the record, signed a waiver of his right to appeal and requested that he be allowed to begin serving his sentence immediately. His attorney also signed the waiver. On January 23, 2001, however, Monreal's attorney filed a notice of appeal, and on January 29, 2001, Monreal himself filed a *pro se* notice of appeal. Neither notice acknowledged the existence of the waiver of appeal. On August 20, 2001, Monreal filed his original appellate brief, and on September 4, 2001, he filed an amended brief. On September 11, 2001 the State filed a motion in the court of appeals to dismiss Monreal's appeal.

The court of appeals dismissed Monreal's appeal on the basis of the waiver. *Monreal v. State*, No. 02–01–057–CR (Tex. App.-Fort Worth, October 25, 2001), *order dismissing appeal.* The court of appeals relied on the general rule that a valid waiver of appeal is binding on the defendant and prevents him from appealing any issue without the consent of the trial court. *Id.* The court of appeals noted that Monreal neither disavowed his waiver as invalid nor obtained permission from the trial court to appeal. *Id.* The court of appeals considered irrelevant the fact that Monreal's waiver was not entered into as part of an agreement with the State. *Id.*

We granted review to determine whether the court of appeals erred in dismissing Monreal's appeal based on his waiver.

Before this Court, Monreal contends, as he did below, that the rule that a valid waiver of appeal prevents a defendant from appealing without the consent of the trial court does not or should not apply to non-negotiated waivers of appeal. He argues that precedent suggesting otherwise

is distinguishable either because it involved negotiated waivers or because it failed to address the arguments he now advances.

Monreal presents three arguments. He argues, first, that the rule is not applicable to non-negotiated waivers because the purpose of the rule which, he alleges, is to hold defendants to their bargains—is inapplicable where the defendant did not waive appeal pursuant to an agreement. He argues, second, that no good reason exists to support applying the rule in situations where the defendant did not waive appeal pursuant to an agreement. He argues, third, that applying the rule to non-negotiated waivers of appeal would create bad policy.

In the alternative, Monreal argues that, even if non-negotiated waivers of appeal prevent a defendant from appealing without the consent of the trial court, the court of appeals erred in denying his request to stay his appeal to allow him to seek consent from the trial court to appeal.

## I. The Rule

Article 44.02 of the Code of Criminal Procedure provides a defendant the right to appeal. However, Article 1.14 of that same Code provides that a defendant in a non-capital felony case may waive any right secured to him by law.

In *Ex parte Tabor*, the defendant pled guilty before the court, filed a written waiver of appeal, and then filed a timely notice of appeal. *Ex parte Tabor*, 565 S.W.2d 945, 946 (Tex.Crim.App.1978). After he was arrested because he was erroneously out on an appeal bond, he challenged the denial of his right to appeal in an application for writ of habeas corpus. *Id.* In that case, we found the waiver was valid, and we applied the rule that a valid waiver of appeal, one made voluntarily, knowingly, and intelligently, will prevent a

defendant from appealing without the consent of the trial court. *Id.* This rule had been implied in *Reed v. State*, 516 S.W.2d 680, 682 (Tex.Crim.App.1974), where the defendant claimed his second trial was a nullity because the trial court did not have authority to grant a new trial after he waived appeal, and we held that a trial court can permit a defendant to perfect appeal despite a valid waiver of appeal. The rule was then adopted in *Ex parte Dickey*, 543 S.W.2d 99, 100 (Tex.Crim.App. 1976), where the defendant waived appeal pre-trial but confirmed the waiver after sentencing, and we found the waiver was made knowingly, voluntarily, and intelligently and therefore prevented the defendant from appealing any issue unless the trial court consented to the appeal. In adopting this rule, we rejected an alternative rule proposed as dicta in *Abron v. State*, 531 S.W.2d 643, 645 (Tex.Crim.App. 1976), that a valid waiver of appeal is "effective unless and until a timely notice of appeal is filed."

Although we have long held that a valid waiver of appeal prevents a defendant from appealing without the trial court's consent, we have never addressed explicitly whether the rule applies to negotiated and non-negotiated waivers alike. In our cases involving waiver of appeal, where the opinion does not state explicitly whether an agreement existed, it is not clear whether the waiver was made pursuant to an agreement. *See Ex parte Tabor*, 565 S.W.2d 945; *Ex parte Hogan*, 556 S.W.2d 352 (Tex.Crim.App.1977); *Johnson v. State*, 556 S.W.2d 816 (Tex.Crim.App. 1977).

## II. The Purpose Behind the Rule

We address, first, Monreal's contention that the purpose of the rule is to prevent defendants from appealing despite receiving the benefit of a bargain and that there-

fore the rule does not apply to non-negotiated waivers of appeal. Monreal argues that this purpose is demonstrated by our reasoning in *Blanco v. State*, 18 S.W.3d 218 (Tex.Crim.App.2000), and embraced by Rule of Appellate Procedure 25.2(b), which, he argues, is persuasive in determining whether negotiated and non-negotiated waivers should be treated alike.

### A. *Blanco*

In *Blanco*, after being convicted by a jury, the defendant waived his right to appeal pursuant to an agreement that the prosecution would recommend a sixteen-year sentence. *Blanco*, 18 S.W.3d at 219. The prosecution did so recommend, and the trial court followed the recommendation. *Id.* Blanco appealed, and the court of appeals dismissed the appeal, holding Blanco to his promise. *Id.* We affirmed the court of appeals' judgment. *Id.*

Monreal distinguishes his case from *Blanco* on the ground that Blanco's waiver was made pursuant to an agreement and his was not. Monreal argues that our decision in *Blanco* was based on the theory that defendants who enter into agreements should not be allowed to gain the benefit of the agreement and then renege on their part of the agreement without the consent of the trial court.

Although *Blanco* does discuss holding a defendant to an agreement, the more relevant distinction between the instant case and *Blanco* is the timing of the waiver, because *Blanco* addressed only whether a defendant could be bound by a pre-sentencing waiver of appeal, and not the binding nature of waivers made after sentencing.

Before *Blanco*, we had held that pre-trial and pre-sentencing waivers were not binding on a defendant as they could not, as a matter of law, be made knowingly, voluntarily, and intelligently. *Ex parte Thomas*, 545 S.W.2d 469 (Tex.Crim.App. 1977); *Ex parte Townsend*, 538 S.W.2d 419 (Tex.Crim.App.1976). The reason for that holding was that the right to appeal had not yet matured, the defendant had no way of knowing with certainty the punishment that would be assessed and could not anticipate the errors that may occur during trial. *Id.*

In *Blanco*, we found *Thomas* factually distinguishable because in *Thomas* the defendant had not bargained for a sentencing recommendation from the prosecution. *Blanco*, 18 S.W.3d at 219. This fact was significant because it was the validity of the waiver that was of concern in earlier cases, and the existence of an agreement lessened such concerns, at least where the trial court followed the agreement. The agreement put the defendant in a position to be able to knowingly, voluntarily, and intelligently waive appeal, because he would know what his punishment would be and what errors may have occurred during trial at the time of his waiver.

Therefore, both *Blanco* and the precedent from which it was distinguished, applied the general proposition that a valid waiver of appeal will prevent a defendant from appealing without the trial court's consent. *Blanco* did not hold that waivers of appeal must be made pursuant to an agreement to be binding; it explained why a pre-sentencing waiver made pursuant to an agreement with the State and followed by the trial court may not encounter the same validity concerns that arose in *Thomas* and *Townsend*. The concerns raised in *Thomas* and *Townsend* do not arise in post-sentencing waivers, because these decisions were based on the timing of the waiver.

Therefore, *Blanco* does not support Monreal's contention that the purpose of the rule is to hold defendants to their bargains.

## B. Rule of Appellate Procedure 25.2(b)

Monreal also argues that Rule of Appellate Procedure 25.2(b) embraces the same purpose of holding a defendant to his bargain as does the rule holding a defendant to a valid waiver of appeal unless the trial court consents to the defendant appealing despite the waiver, and should therefore be persuasive regarding whether non-negotiated waivers should be treated the same as negotiated waivers.

Rule of Appellate Procedure 25.2(b) provides:

> [I]f the appeal is from a judgment rendered on the defendant's plea of guilty or nolo contendere under Code of Criminal procedure article 1.15, and the punishment assessed did not exceed the punishment recommended by the prosecutor and agreed to by the defendant, the notice must: (A) specify that the appeal is for a jurisdictional defect; (B) specify that the substance of the appeal was raised by written motion and ruled on before trial; or (C) state that the trial court granted permission to appeal.

Rule 25.2(b), formerly Rule 40(b)(1), incorporated a proviso the Legislature added to Article 44.02 of the Code of Criminal Procedure in 1977.

First, we note that Code of Criminal Procedure article 44.02, as enacted in 1925, stated only that "[a] defendant in any criminal action has the right of appeal under the rules hereinafter prescribed." Tex.Code Crim. P. article 44.02 (Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722). In 1977 Article 44.02 was amended to add this proviso:[1]

provided, however, before the defendant who has been convicted upon either his plea of guilty or plea of nolo contendere before the court and the court, upon the election of the defendant, assesses punishment and the punishment does not exceed the punishment recommended by the prosecutor and agreed to by the defendant and his attorney may prosecute his appeal, he must have permission of the trial court, except on those matters which have been raised by written motion filed prior to trial.

This proviso was a legislative response to the *Helms* Rule, established in *Helms v. State*, 484 S.W.2d 925 (Tex.Crim.App. 1972), that where a plea of guilty is knowingly, voluntarily, and intelligently made, all non-jurisdictional defects including claimed deprivation of federal due process are waived. The *Helms* Rule was clarified in *Young v. State*, 8 S.W.3d 656 (Tex.Crim. App.2000), where we held that with or without an agreed recommendation on punishment, a valid plea of guilty or nolo contendere waives or forfeits the right to appeal a claim of error only when the judgment of guilt was rendered independent of and not supported by the error.

In *Young*, we recognized that the 1977 amendment "authorized conditional appeals only in plea-bargained cases because a defendant who had no plea-bargain agreement with the State was still governed by the *Helms* Rule and could preserve issues for appeal only by pleading not guilty." *Young*, 8 S.W.3d at 666. The fact that under our interpretation of the proviso before *Young*, it operated to allow a greater opportunity for a plea-bargaining

---

1. Act of June 10, 1977, 65th Leg., R.S., ch. 351, § 1, 1977 Tex. Gen. Laws 940. Repealed by Act of June 14, 1985, 69th Leg., R.S., ch. 685, §§ 1 & 4, 1985 Tex. Gen. Laws 2472 (authorizing Court of Criminal Appeals to promulgate rules of procedure and condi-tionally repealing articles of Code of Criminal Procedure). The proviso was repealed simultaneously with the effective date of former Rule of Appellate Procedure 40(b)(1), the predecessor of Texas Rule of Appellate Procedure 25.2(b).

defendant to appeal than a non-plea-bargaining defendant who nevertheless entered a guilty plea runs counter to Monreal's argument.

Under *Young* and current Rule 25.2(b), both bargaining and non-bargaining defendants can appeal rulings on written, pre-trial motions as well as jurisdictional issues. However, a non-bargaining defendant pleading guilty may be able to appeal an error not raised on a written pre-trial motion, if it is otherwise preserved and survives *Young*. A bargaining defendant would be required to obtain the trial court's consent to appeal the same issue. In this way, the consent requirement does limit a bargaining defendant's ability to appeal more than a non-bargaining defendant.

Although Monreal may be correct that the provisions embrace the same purpose as the general rule he challenges, it is not the purpose of holding the defendant to his bargain. Where a defendant has waived a jury under Article 1.15 of the Code of Criminal Procedure, enters a plea agreement, and the punishment assessed does not exceed the agreed recommendation, the defendant is aware of what he will receive from the bargain and he can preserve contested legal issues for appeal by obtaining a ruling on a written pre-trial motion. A similar defendant without a plea agreement could not know what errors might occur after the plea and therefore could not raise those issues in a pretrial motion. Therefore, as in *Blanco*, it may not be the exchange of benefits in the agreement, but the consequence of having an agreement, the fact that the defendant would know what would occur after the plea, that may explain the discrepancy between bargaining and non-bargaining defendants.

Rule 25.2(b) may suggest a parallel distinction in the treatment of negotiated and non-negotiated pre-trial waivers, as the rule Monreal challenges, but, like *Blanco*, does not address post-sentencing waivers.

## C. Historical Context

Additionally, examining the legal context in which the rule of holding defendants to their valid waivers of appeal arose can be helpful in determining the purpose of the rule. At the same time the Legislature added the former proviso to Article 44.02 of the Code of Criminal Procedure, it amended Article 26.13 to provide that before accepting a plea of guilty or nolo contendere, the trial court shall inquire as to the existence of any plea bargaining agreements and inform the defendant whether it will follow or reject such agreement and if rejecting, allow the defendant to withdraw the plea. Tex.Code Crim. Proc. article 26.13, as amended by acts 1977 65th leg. P. 748 ch. 280, effective August 29, 1977. Prior to this, and at the time of the trials in *Reed*, *Dickey*, and *Tabor*, no statutory mechanism existed to recognize negotiated pleas, and agreements were often hidden from courts out of fear the court would find the waiver involuntary because it was induced by a promise. *See, e.g., Bushnell v. State*, 975 S.W.2d 641, 642 (Tex.App.-Houston 14th Dist.1998, pet. ref'd). However, in many cases around this time, we openly encouraged such agreements. *See, e.g., Williams v. State*, 476 S.W.2d 674 (Tex.Crim.App.1972)(disposition after agreement not only essential but desirable); *Erdelyan v. State*, 481 S.W.2d 843 (Tex.Crim.App.1972)(Legislature has not yet adopted recommendation regarding plea agreements, but courts could ask about the existence of an agreement); *Guster v. State*, 522 S.W.2d 494 (Tex.Crim.App.1975)(better for plea bargains to be in the open so there is no sham).

Determining whether a rule developed during this time relied on the existence of an agreement might be difficult. However, in *Dickey,* we recognized the reality of the plea bargaining process and the fact that the defendant's waiver of appeal may be used as a bargaining tool, but in doing so, stated that the procedure of requiring the defendant to waive such rights prior to trial should be condemned because, under the laws at that time, "the defendant is put in the position of fearing that if he does not waive such rights it may affect the punishment assessed or result in a denial of his motion for probation, if any." *Dickey,* 543 S.W.2d at 101. Having implied the waiver might have been made pursuant to an agreement, we relied on the knowing, voluntary, and intelligent nature of the waiver Dickey made after sentencing to find that Dickey was bound by his waiver of appeal. *Id.* at 104.

Moreover, in determining when defendants were bound by their waivers of appeal, courts of appeals have consistently expressed their rulings in terms of whether the waiver was knowingly, voluntarily, and intelligently made, even when they acknowledged the defendant had waived the right pursuant to an agreement and had received some benefit. *See, e.g., Dorsey v. State,* 84 S.W.3d 8 (Tex.App.Texarkana 2002); *Schneider v. State,* 9 S.W.3d 466 (Tex.App.Fort Worth 1999); *Reyna v. State,* 993 S.W.2d 142 (Tex.App.San Antonio 1999, pet. ref'd); *Turner v. State,* 956 S.W.2d 789 (Tex.App.-Waco 1997); *Perez v. State,* 885 S.W.2d 568 (Tex.App.El Paso 1994). Although in some court of appeals' opinions, the courts have referred to "holding the defendant to the bargain," the conclusion that the defendant should be bound by the waiver made pursuant to a bargain has rested first on determining that the defendant's waiver was valid and only then on whether the defendant received the benefit of the bargain. *See*

*Freeman v. State,* 913 S.W.2d 714, 718 (Tex.App.Amarillo 1995, no pet.).

We reject Monreal's argument that the purpose of the rule was to hold defendants to their bargain.

### III. Reason to hold defendant to waiver

We turn next to Monreal's contention that no good reason exists to support applying the rule in situations where the defendant did not waive appeal pursuant to an agreement. Monreal first points to some rights defendants can reinvoke after waiver, such as the right to remain silent and the right to an attorney. We note that both the right to counsel and the right to remain silent are constitutional rights. The right to appeal is not. Additionally, the Code of Criminal Procedure article 1.051(h) provides for the defendant's ability to withdraw the waiver of right to counsel. No procedure is provided in the Code for a defendant to withdraw a valid waiver of appeal. Monreal does not provide support for his argument that the right to appeal should be analogous to the right to remain silent. Nor does Monreal distinguish the right to appeal from other rights that may not be reinvoked after waiver. Finally, the rule Monreal urges us to recognize or adopt would allow a defendant making a valid waiver of appeal to avoid the waiver without any limitations on the reassertion of the right. Even when we found it necessary to provide a process by which a defendant could reassert the right to a jury trial after waiver, a constitutional right, we required that the defendant request permission from the trial court. *Marquez v. State,* 921 S.W.2d 217 (Tex. Crim.App.1996).

Second, Monreal contends that equity does not support holding a defendant to a non-negotiated waiver because the State

would neither have the right to rely on a non-negotiated waiver nor be able to demonstrate prejudice by the withdrawal of such a waiver unless the defendant failed to file timely notice. However, Monreal provides no support for his argument that the State does not have the right to rely on an explicit, affirmative waiver of appeal or for his argument's logical premise that reliance is required for such a waiver to be binding. Additionally, while Monreal argues that the State would be unable to show prejudice resulting from the withdrawal of an explicit non-negotiated waiver of appeal, assuming without deciding that such reliance and prejudice were required, we are not persuaded that no situation could arise in which it would be inequitable to allow a defendant to appeal after having entered a valid waiver appeal.

Finally, Monreal suggests there exists a need to prevent courts from inducing criminal defendants to waive the right to appeal after losing at trial when the waiver only benefits the court and the prosecutor. However, he fails to demonstrate that such a need exists, that the need is not sufficiently met, that the waiver only benefits the court and the prosecutor, or that allowing defendants to avoid a valid non-negotiated waiver of appeal would be an appropriate method of prevention.

## IV. Policy

Finally, we address Monreal's argument that applying the rule to non-negotiated waivers of appeal would be bad policy because it would provide a hollow remedy and lead to disparate treatment of defendants.

First, recognizing the authority of the trial court to allow a defendant to appeal despite a valid waiver of appeal was not intended to provide a remedy to a defendant who has validly waived the right to appeal, because validly waiving appeal is

not error and therefore does not require a remedy.

Second, Monreal's disparity argument, even if correct, logically fails to establish that defendants should not be bound by non-negotiated waivers of appeal, because it addresses instead the scope of the trial court's authority to allow the defendant to appeal despite the waiver. Because Monreal did not request consent, was not denied consent, and was not refused review of such denial, his disparity argument is beyond the scope of our current review, and we cannot reach the issue of what a trial court should consider or whether the trial court's decision regarding consent is reviewable.

When asked to choose between a rule stating that a waiver of appeal is binding unless and until the defendant files a notice of appeal and a rule stating that a valid waiver of appeal is binding on the defendant and will prevent the defendant from appealing without the consent of the trial court, we have consistently opted for the latter. *See Ex parte Dickey,* 543 S.W.2d 99; *Johnson,* 556 S.W.2d 816; *Ex parte Tabor,* 565 S.W.2d 945. This decision has never been based on whether the defendant received some benefit in exchange for the waiver, but rather on whether, as the rule states, the waiver was voluntary, intelligent, and knowing, and thus valid. *See Id.; and also Blanco,* 18 S.W.3d 218. Therefore, we reaffirm that a valid waiver of appeal, whether negotiated or non-negotiated, will prevent a defendant from appealing without the consent of the trial court.

Monreal argues in the alternative that the court of appeals erred by denying his request to stay his appeal while he sought the trial court's permission to appeal. However, because Monreal waited until after he had filed his appellate brief to request the court of appeals' permission to

amend the notice of appeal in order to request the trial court's permission to allow him to appeal despite his valid waiver, the court of appeals did not err in dismissing the appeal. *See Bayless v. State*, 91 S.W.3d 801 (Tex.Crim.App.2002).

We affirm the court of appeals' dismissal of Monreal's appeal.

JOHNSON, J., filed a concurring opinion.

JOHNSON, J., concurring.

Appellant pleaded guilty to a jury to the offense of aggravated robbery. The jury assessed his punishment at eighteen years confinement. On January 5, 2001, the trial court entered its judgment in accordance with the jury's verdict. On January 12, 2002, appellant and his attorney signed and filed with the trial court a written waiver of appellant's right to appeal and requested that he be allowed to commence serving his sentence immediately.[1] On January 23, 2001, appellant's attorney filed a general notice of appeal with the court of appeals. On January 29, 2001, appellant filed a *pro se* notice of appeal. Neither appellant nor his attorney sought permission from the trial court to file a notice of appeal and neither notice asserted that the written waiver was coerced or involuntary. The state moved to have the appeals dismissed. The court of appeals agreed that the written waiver was binding and dismissed appellant's appeals. *Monreal v. State*, No. 02–01–00057–CR (Tex.App.-Fort Worth, delivered October 25, 2001).

We granted appellant's petition for discretionary review to decide whether the court of appeals erred in holding that he had waived his right to appeal. Specifically, appellant claims that, in a case where a

defendant waives his right to appeal without the benefit of any consideration or promise from the state, he should be allowed to unilaterally withdraw that waiver by the timely filing of a notice of appeal, with or without the permission of the trial court.

Appellant further argues that he should not be required to get permission from the trial court because this would place a defendant who wishes to appeal at the mercy of the trial court; if the trial court wanted to prevent the defendant's appeal, the court could simply refuse consent. Appellant asserts that there is no good reason why a defendant should be subjected to such "whim" of the trial court unless the defendant has waived his appeal as a part of some agreement with the state.

Finally, appellant analogizes the waiver of the right to appeal to the waiver of the right to counsel or to remain silent. He asserts that because a defendant can unilaterally withdraw a waiver of the right to counsel or the right to remain silent, he should also be able to unilaterally withdraw the waiver of the right to appeal.

Appellant's first argument characterizes the waiver of the right to appeal as being similar to a contract with the state. This characterization is incorrect. Our law provides that "[t]he defendant in a criminal prosecution for any offense may waive any rights secured to him by law except that a defendant in a capital felony case may waive the right of trial by jury only in the manner permitted by Article 1.13(b) of this code." Tex.Code Crim. Proc. Art. 1.14(a) (2002). There is no requirement that the state reap a benefit to make a waiver binding upon an appellant or that the state

---

1. There is no other indication in the record as to why appellant chose to waive his right to appeal.

be involved in the waiver at all. The waiver is to the trial court, not to the state.

This Court has long held that a non-plea-bargaining defendant can make a valid waiver of the right to appeal so long as it is done after the trial court has completed sentencing. *See e.g. Rankin v. State,* 46 S.W.3d 899 (Tex.Crim.App.2001); *Ex parte Tabor,* 565 S.W.2d 945 (Tex.Crim.App.1978); *Ex parte Hogan,* 556 S.W.2d 352 (Tex.Crim.App.1977); *Johnson v. State,* 556 S.W.2d 816 (Tex.Crim.App.1977). Neither the Code of Criminal Procedure nor the precedent of this Court require that the state receive some benefit before the waiver of the right to appeal is binding on a defendant.

This Court has also long held that where a valid waiver exists, regardless of whether there was a plea agreement with the state, a defendant who wishes to appeal must either receive the permission of the trial court or prove to the court of appeals that the waiver was coerced or involuntary. *See e.g. Ex parte Tabor,* 565 S.W.2d at 946; *Ex parte Hogan,* 556 S.W.2d at 353; *Johnson v. State,* 556 S.W.2d at 818; *Hurd v. State,* 548 S.W.2d 388, 389–90 (Tex.Crim.App.1977); *Bouchillon v. State,* 540 S.W.2d 319, 321 (Tex.Crim.App.1976).

Appellant relies upon *Blanco v. State,* 18 S.W.3d 218 (Tex.Crim.App.2000) in asserting that the existence of a plea agreement impacts the character of a waiver. This reliance is unfounded. In *Blanco,* appellant entered into a plea agreement with the state that included the waiver of his right to appeal. After the trial court accepted the plea bargain, appellant filed a notice of appeal. He claimed that his waiver was not valid because it was made prior to sentencing. *Blanco,* 18 S.W.3d at 219. This Court held that because appellant knew the details of the plea bargain

and whether any potential errors had occurred prior to entering the waiver, he could not later claim that the waiver was involuntary. *Id.* Because appellant was fully aware of the likely consequences of the waiver, the state was entitled to insist on the benefits of its bargain even though the waiver had been made prior to the trial court sentencing appellant. *Id.* at 220.

*Blanco* did not hold that there must be a plea agreement or that one of the parties must receive some benefit before a written waiver of the right to appeal is binding on a defendant. In *Blanco,* the plea agreement was important because it was essential to determining whether appellant had made a knowing and voluntary waiver of his right to appeal. *Blanco* did not hold that only when a plea agreement exists must appellant seek the permission of the trial court to appeal following a valid waiver. This has never been the law in this jurisdiction.

Appellant has not claimed that his waiver was coerced or involuntary, and his assertion that requiring permission would subject him to the whim of the trial court is without merit. His novel theory, that where the state does not receive any benefit from a waiver a defendant can unilaterally withdraw the waiver, is unsupported by law. This Court has not held that a defendant can simply ignore a waiver of the right to appeal and go straight to a court of appeals without seeking the permission of the trial court, and today we continue to decline to do so. Holding that a defendant can unilaterally waive a written waiver of the right to appeal by the timely filing a notice of appeal would render an otherwise valid and binding waiver meaningless. This could not have been the intent of the legislature when it enacted Art. 1.14(a).[2]

2. TEX.CODE CRIM. PROC. ART. 1.14(a): "The de-

fendant in a criminal prosecution for any

Appellant also asserts that the withdrawal of a waiver of the right to appeal should be treated like the withdrawal of the right to counsel or the right to remain silent. Appellant has neither provided this Court with sufficient briefing nor cited any authority in support of his claim. It is not sufficient that appellant raise a general constitutional doctrine in support of his request for relief. *Rhoades v. State*, 934 S.W.2d 113, 119 (Tex.Crim.App.1996). It is incumbent upon appellant to cite specific legal authority and to provide legal arguments based upon that authority. *Rhoades*, 934 S.W.2d at 119. Appellant has not provided any legal analysis to support his assertion that a waiver of the right to appeal should be treated in a manner similar to the waiver of counsel or the right to remain silent.

I concur in the judgment of the Court.

offense may waive any right secured to him by law except that a defendant in a capital felony case may waive the right of trial by jury only in the manner permitted by Article 1.13(b)."