James Tyrone Walker v. State















IN THE
TENTH COURT OF APPEALS
 

No. 10-03-141-CR

     JAMES TYRONE WALKER,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 2002-306-C
                                                                                                                

O P I N I O N
                                                                                                                

      James Tyrone Walker pleaded guilty to credit card abuse. Pursuant to a plea bargain, the
court sentenced him to ten years’ imprisonment. Walker timely filed a pro se notice of appeal.
      The trial court’s certification regarding Walker’s right of appeal states, “[T]he defendant has
waived the right of appeal.” Rule of Appellate Procedure 25.2(d) provides in pertinent part, “The
appeal must be dismissed if a certification that shows the defendant has the right of appeal has not
been made a part of the record under these rules.” Tex. R. App. P. 25.2(d).
      The trial court’s certification affirmatively shows that Walker has no right of appeal. Two
courts of appeals have concluded that such a certification is “defective” and the parties should be
given thirty days to cure it under Rule 37.1.


 Daniels v. State, No. 04-03-176-CR, slip op. at 4-5,
2003 WL 21011277, at *2 (Tex. App.—San Antonio May 7, 2003, order); Teel v. State, No. 09-03-040-CR, slip op. at 2, 2003 WL 1848662, at *1 (Tex. App.—Beaumont Apr. 10, 2003, no pet.
h.).
      Two other courts of appeals notify the appellant that the appeal is subject to dismissal unless
the appellant shows grounds for continuing the appeal. Smith v. State, No. 12-03-079-CR, 2003
WL 1883467, at *1 (Tex. App.—Tyler Apr. 16, 2003, no pet. h.) (not designated for publication);
Hasty v. State, No. 02-03-021-CR, 2003 WL 1784664, at *1 (Tex. App.—Fort Worth Apr. 3,
2003, no pet. h.) (not designated for publication). These courts do not expressly characterize a
certification as “defective” if it states that the defendant has no right of appeal. Thus, they do not
invoke the provisions of Rule 37.1.


 See id.
      Four other courts of appeals take the trial court’s certification that the defendant has no right
of appeal at face value and dismiss the appeal. Hynson v. State, No. 05-03-085-CR, 2003 WL
1995143, at *1 (Tex. App.—Dallas May 1, 2003, no pet. h.) (not designated for publication);
Aguilar v. State, No. 14-03-346-CR, 2003 WL 1922509, at *1 (Tex. App.—Houston [14th Dist.]
Apr. 24, 2003, no pet. h.) (not designated for publication); Harris v. State, No. 01-03-114-CR,
2003 WL 1849186, at *1 (Tex. App.—Houston [1st Dist.] Apr. 10, 2003, no pet. h.) (not
designated for publication); Smith v. State, No. 11-03-067-CR, 2003 WL 1393983, at *1 (Tex.
App.—Eastland Mar. 20, 2003, no pet. h.) (not designated for publication).
      We agree with the latter four courts cited hereinabove that a certification of the defendant’s
right of appeal is not “defective” if it affirmatively indicates that the defendant has no right of
appeal. The form certification promulgated by the Court of Criminal Appeals expressly provides
for this type of certification. See Tex. R. App. P. 25.2 app. (Vernon 2003). Thus, “correction”
of such a certification under Rule 37.1 is not warranted. Cf. id. 37.1.
      We likewise agree with the latter four courts cited above that we should take a trial court’s
certification that a defendant has no right of appeal at face value. We decline to employ Rule 44.3
because this rule applies only when there are “formal defects or irregularities.” Tex. R. App. P.
44.3. As stated, a certification which affirmatively states that a defendant has no right of appeal
is not “defective,” nor is it “irregular.”
      The trial court has certified that Walker waived the right of appeal. Walker and his attorney
personally signed the trial court’s certification. Accordingly, we dismiss the appeal. Id. 25.2(d);
see also Monreal v. State, 99 S.W.3d 615, 622 (Tex. Crim. App. 2003) (“a valid waiver of
appeal, whether negotiated or non-negotiated, will prevent a defendant from appealing without the
consent of the trial court.”).
                                                                   REX D. DAVIS
                                                                   Chief Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Appeal dismissed
Opinion delivered and filed May 28, 2003
Publish
[CR25]



" height="14" border="0">

 Having offered an explanation void of any
racially discriminatory intent on its face, the State met its burden of articulating a race-neutral
explanation for the use of a peremptory strike against Number 6.
      Once the State provided race-neutral reasons for its peremptory strikes, the burden was on
Chiles to rebut the State’s reasons by showing that the explanation was merely a sham or pretext
for discrimination. Williams v. State, 804 S.W.2d 95, 101-02 (Tex. Crim. App.1991). However,
the record indicates that trial counsel did nothing more than to ask the prosecutor for his
explanation and then to assert to the Court that the State had not met its burden of proof. Chiles
now claims disparate treatment by the State and presents a comparative analysis between Number
6 and prospective jurors numbers 1, 13, and 36. The Court of Criminal Appeals has held that
defendants are not required to make comparisons of the venirepersons at the trial level to have the
same evidence considered on appeal. Young, 826 S.W.2d at 146. Therefore, we will consider
this comparative analysis in addition to Number 6's performance during voir dire.
Disparate treatment
      Factors that may indicate disparate treatment of prospective jurors by the State include: (1)
failing to question any of the minority venirepersons, yet striking them anyway; (2) striking
minority venirepersons who gave answers similar to those of majority venirepersons who were not
struck; or (3) striking minority venirepersons who had the same characteristics professionally,
socially, religiously, etc. as majority venirepersons who were not struck. Id. at 145. These
factors enter into the trial court’s assessment of the prosecutor’s credibility and eventually the trial
court’s determination of the racial neutrality of the prosecutor’s peremptory challenges. Id.
      Chiles points to three non-minority panel members, who were not subject to peremptory
challenges by the State to illustrate evidence of disparate treatment by the State:
      1.   Prospective Juror Number 1 expressed concern regarding conviction based upon the
testimony of only one eye-witness, asserting that he would have to hear both sides. 
Number 6 voiced a similar concern and said, “I need to hear both sides.”
      2.   Prospective Juror Number 13 expressed confusion regarding the defense’s burden to
prove insanity by a preponderance of the evidence and asked if the jury would decide
guilt or innocence based on temporary insanity. Without elaboration, Chiles claims that
it is clear from the record that this panel member expressed more confusion and less
understanding than did Number 6.
      3.   Prospective Juror Number 36 asked what would happen to the defendant if the jury found
him not guilty by reason of insanity. Chiles asserts that this is comparable to Number
6's question regarding whether the defendant still was insane.
Reviewing the entire record, we find that there are some similarities between Number 6 and these
three veniremembers as Chiles claims. However, there is one major difference. Not one of the
three veniremembers indicates that he does not understand the law, but Number 6 does. In an
exchange with defense counsel, Number 6 asked if he will have to follow the law “without
understanding enough of it to render a verdict.” We note that after the State explained to Number
13 the possible verdicts of guilty, not guilty, and not guilty by reason of insanity, she stated, “I
understand.” Similarly, Number 36 responded that he understood the Court’s explanation that the
jury need not be concerned with anything other than guilt or innocence. We are not left with a
firm and definite conviction that a mistake has been made here. Bryant, 923 S.W.2d at 208-09.
Number 6
      Furthermore, Chiles argues that the record rebuts the State’s explanation that Number 6 was
struck because he did not understand the legal concepts involving the insanity defense or a juror’s
ability to convict a defendant based on the testimony of one eye-witness. Chiles asserts that
Number 6 asked thoughtful and intelligent questions in an attempt to clarify his understanding of
the law: for example, whether Chiles still manifested symptoms of a mental disease at the time of
trial and whether a doctor would testify at the trial. With respect to statements made by Number
6 that it would be hard to “make a decision off of one eyewitness” and that he would have to hear
both sides, Chiles claims that Number 6 displayed no confusion or misunderstanding regarding
the legal concept as explained by the State. However, Chiles does not provide any evidence that
the State’s reasons for striking Number 6 were a pretext for purposeful racial discrimination. 
Williams v. State, 804 S.W.2d at 101-02. Even if Chiles has shown that Number 6 did understand
these legal concepts, Chiles has still failed to meet his burden of rebutting the State’s race-neutral
explanation.
      Having examined the record and the comparative analysis offered by Chiles, we do not find
that the Court’s finding was clearly erroneous. Therefore, we overrule the first issue.
INSTRUCTION ON DIMINISHED CAPACITY
      During the guilt-innocence phase of the trial, Chiles produced evidence in support of his
insanity defense. In its charge to the jury, the Court included an instruction regarding this
defense. However, the jury rejected the defense when it found Chiles guilty of kidnaping. At the
charge conference in the punishment phase, Chiles requested that the court include in the jury
charge an instruction regarding diminished mental capacity at the time of the offense: 
You are instructed that, in assessing the defendant’s punishment in this case, you may
consider, but are not required to consider, defendant’s diminished mental capacity at the
time of the offense, if any.
 
“Diminished mental capacity” means an abnormality of the functioning of the mind
resulting from a mental disease or defect. “Depression” is a mental disease or defect.

The Court denied the request, but the charge did include the instruction that the jury could
consider “all of the facts shown by the evidence admitted before you” in fixing the punishment. 
Chiles now argues that the Court abused its discretion in overruling his request for the instruction
on diminished capacity and denying the jury the opportunity to consider his mental state at the time
of the offense in assessing his punishment. We disagree.
      A trial court abuses its discretion if it acts without reference to guiding principles or rules. 
See Lyles v. State, 850 S.W.2d 497, 502 (Tex. Crim. App. 1993). In this case, we look to
legislation and case law for guidance. The state legislature has specifically provided for mitigation
of punishment in two instances. The Texas Code of Criminal Procedure allows for a specific
instruction on mitigating evidence in capital cases. Tex. Code Crim. Proc. art. 37.071. The
Texas Penal Code provides for a jury instruction at punishment on mitigation due to temporary
insanity caused by voluntary intoxication. Tex. Pen. Code § 8.04. Furthermore, Chiles admits
that the issue of whether a trial court errs in failing to instruct the jury on diminished capacity as
a result of mental illness is one of first impression in Texas case law. Texas courts have addressed
the issue of diminished capacity only with respect to the guilt-innocence phase of trial.


 Based
upon specific legislation and lack of case law, it appears that had the court granted the request of
Chiles, it would have acted without reference to guiding principles or rules. Therefore, we cannot
find that the court abused its discretion in denying the request for the instruction on diminished
capacity.
      In addition, Chiles contends that he has been denied due course of law protection under the
Texas Constitution because the jury could not consider diminished capacity due to mental disease
at the punishment phase. Article 1, Section 19 of the Texas Constitution provides that “[n]o
citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any
manner disenfranchised, except by the due course of law of the land.” As Chiles points out, “due
course of law of the land” means “that punishment for a crime will be imposed only by and
through a trial in accordance with law.” McFarlane v. State, 254 S.W.2d 136, 137 (Tex. Crim.
App. 1953). In his brief, Chiles asks us to provide him with due course of law by rewriting the
“law of the land” to allow the mitigation charge under Section 8.04 to apply to diminished
capacity as well as insanity caused by voluntary intoxication. Although it may appear inequitable
to Chiles that one who chooses to use alcohol is allowed a charge in mitigation of punishment
while one who suffers from a mental disease is not, the fact remains that Chiles was tried in
accordance with the law as it stands. We agree with the State that it is the job of the legislature
to write and enact laws. Thus, we decline to do so.
      Therefore, we overrule the second issue.
CONCLUSIONHaving overruled both issues, we affirm the trial court’s judgment.
 
                                                                         TOM GRAY
                                                                         Justice

Before Chief Justice Davis
      Justice Vance, and
      Justice Gray
Affirmed
Opinion delivered and filed August 22, 2001
Publish