In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00091-CR


______________________________




JAMES ALFRED SINGLETON, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 8th Judicial District Court


Delta County, Texas


Trial Court No. 6685




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION


 On September 12, 2005, James Alfred Singleton, Jr., pled guilty to committing the offense
of aggravated sexual assault. See Tex. Penal Code Ann. § 22.021 (Vernon Supp. 2006). The trial
court accepted Singleton's plea and found the evidence substantiated his guilt; but, pursuant to a
negotiated plea agreement, the trial court further deferred a finding of guilt and released Singleton
to community supervision for a period of two years. On November 17, 2005, the State filed an
application to proceed with an adjudication of guilt in the underlying matter. This application was
later amended January 25, 2006. The trial court subsequently adjudicated Singleton's guilt and
assessed his punishment at twenty-five years' imprisonment. 

 Singleton now appeals, asserting he received ineffective assistance of counsel during either
the original guilty plea proceeding or during the adjudication proceeding because his trial counsel
should not have allowed him to either plead guilty to the original crime or plead "true" to violating
the terms and conditions of his community supervision agreement with the trial court. We, however,
have determined that we need not reach the issue presented inasmuch as another issue--a
jurisdictional bar--prevents our resolving Singleton's point of error.

 The record before us shows Singleton affirmatively waived his right to appeal the trial court's
judgment revoking community supervision. In this waiver, Singleton states he understands his
appellate rights, but he prefers to "accept as final the judgment of conviction and sentence . . . ." 
Singleton  also  requests  that  he  "be  allowed  to  commence  serving  the  same  without  further
delay . . . ." 

 The Texas Court of Criminal Appeals recently affirmed that "a valid waiver of appeal,
whether negotiated or non-negotiated, will prevent a defendant from appealing without the consent
of the trial court." Monreal v. State, 99 S.W.3d 615, 622 (Tex. Crim. App. 2003). Such is the case
here. The record before us does not affirmatively demonstrate Singleton either sought or obtained
the trial court's permission to appeal. The waiver itself demonstrates he knowingly, intelligently, and
willingly waived his right to appeal. Accordingly, we must conclude Singleton's waiver of appeal
is binding and deprives this Court of jurisdiction to consider his point of error. Accord id. at 623.

 For the reasons stated, we dismiss Singleton's appeal.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: April 3, 2007

Date Decided: April 10, 2007


Do Not Publish




ft: 0.5in; margin-right: 0.5in">JAMES LONGINO, M.D., Appellant
 
V.
 
DOUGLAS CROSSWHITE AND KAM CROSSWHITE, ON BEHALF OF 
 ASHTON DOUGLAS CROSSWHITE, A MINOR, Appellees


                                              

On Appeal from the 62nd Judicial District Court
Hopkins County, Texas
Trial Court No. CV36067


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N
          James Longino, M.D., appeals from the denial of his motion challenging the expert
report in this medical malpractice lawsuit brought by Douglas Crosswhite and Kam
Crosswhite, on behalf of Ashton Douglas Crosswhite, their minor son. Because the expert
report fails to provide specific information concerning Longino's conduct, the trial court
abused its discretion in denying the motion. We reverse and remand for further
proceedings consistent with this opinion.
The Expert Report
          At close to midnight October 19, 2002, the Crosswhites took their three-year-old
child, Ashton, to the Hopkins County Memorial Hospital Emergency Department with
symptoms of a possible upper respiratory infection, accompanied by nausea, vomiting, and
fever. Ricky Cameron, M.D., the emergency room physician, prescribed some medications
to alleviate the vomiting, ordered increased fluids, and told the Crosswhites to return the
child for a recheck in twenty-four hours if his condition had not improved. Approximately
twenty-two hours later, the Crosswhites returned to the emergency room with Ashton,
whose condition had deteriorated. Cameron admitted Ashton to the hospital, prescribed
additional medication and IV fluids, and consulted by telephone with Longino, a 
pediatrician who had treated Ashton in the past. The following morning, at around nine
o'clock, Longino ordered tests conducted that diagnosed Ashton with bacterial meningitis. 
Around noon the same day, Ashton was transferred to the Children's Medical Center of
Dallas, where he eventually recovered, but with what the Crosswhites' expert describes as 
"significant and permanent neurological injuries."
          The Crosswhites sued Cameron, Longino, and Hopkins County Memorial Hospital
for medical malpractice. The Crosswhites alleged that a prudent physician would have
performed the tests necessary to diagnose the bacterial meningitis earlier and that the
delay was the cause of Ashton's "significant and permanent neurological injuries." After
the Crosswhites filed their expert report, Longino filed a motion challenging the adequacy
of that report. The trial court denied Longino's motion.
The Expert Report Is Not a Good-Faith Effort
          Longino contends, in his sole point of error, that the report provided by the
Crosswhites fails to describe any specific conduct on his part which could be construed as
a deviation from the standard of care. Reviewing the four corners of the expert report, we
agree.
          Section 74.351 of the Civil Practice and Remedies Code requires a plaintiff
asserting a healthcare liability claim to submit an expert report, along with the expert's
curriculum vitae, as to each physician or healthcare provider named as a defendant in the
suit,  no  later  than  the  120th  day  after  filing  suit.  See  Tex.  Civ.  Prac.  &  Rem.  Code
Ann. § 74.351(a) (Vernon Supp. 2005).


 The Act describes an expert report as a written
report providing "a fair summary of the expert's opinions . . . regarding applicable standards
of care, the manner in which the care rendered by the physician or health care provider
failed to meet the standards, and the causal relationship between that failure and the
injury, harm, or damages claimed." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6).
          If a claimant furnishes a report within the time permitted, a defendant may file a
motion challenging the report. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(l). The trial
court shall grant the motion only if it appears to the court, after a hearing, that the report
does not represent an objective good-faith effort to comply with the statutory definition of
an expert report. See id.; Am. Transitional Care Ctrs. v. Palacios, 46 S.W.3d 873, 877
(Tex. 2001). 
          We review a trial court's decision regarding the adequacy of an expert report by an
abuse-of-discretion standard. Hillcrest Baptist Med. Ctr. v. Wade, 172 S.W.3d 55, 60 (Tex.
App.—Waco 2005, pet. filed); see Group v. Vicento, 164 S.W.3d 724, 727 (Tex.
App.—Houston [14th Dist.] 2005, pet. filed). An abuse of discretion occurs when a trial
court acts in an arbitrary or unreasonable manner or without reference to any guiding rules
or principles. Bowie Mem'l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002). A trial court
does not abuse its discretion simply because it may decide a matter within its discretion
differently than an appellate court. Downer v. Aquamarine Operators, Inc., 701 S.W.2d
238, 242 (Tex. 1985). However, "a clear failure by the trial court to analyze or apply the
law correctly will constitute an abuse of discretion . . . ." Walker v. Packer, 827 S.W.2d
833, 840 (Tex. 1992).  
          In determining whether the report represents a good-faith effort, the trial court's
inquiry  is  limited  to  the  four  corners  of  the  report.  Tex.  Civ.  Prac.  &  Rem.  Code
Ann. § 74.351(r)(6); Palacios, 46 S.W.3d at 878. A "good-faith" effort requires that the
report discuss the standard of care, breach, and causation with sufficient specificity to
inform the defendant of the conduct the plaintiff has called into question and to provide a
basis for the trial court to conclude that the claims have merit. Palacios, 46 S.W.3d at 875.
"To avoid dismissal, a plaintiff need not present evidence in the report as if it were actually
litigating the merits. The report can be informal in that the information in the report does
not have to meet the same requirements as the evidence offered in a summary-judgment
proceeding or at trial." Id. at 879. The expert report is not required to prove the
defendant's liability, but rather only provide notice of what conduct forms the bases of the
plaintiff's complaints. 
          "To constitute a 'good-faith effort,' the report must provide enough information to
fulfill two purposes: (1) it must inform the defendant of the specific conduct the plaintiff has
called into question, and (2) it must provide a basis for the trial court to conclude that the
claims have merit." Wright, 79 S.W.3d at 52 (citing Palacios, 46 S.W.3d at 879). Omission
of any of the statutory elements prevents the report from being a good-faith effort. 
Palacios, 46 S.W.3d at 879. A report that merely states the expert's conclusions about the
standard of care, breach, and causation does not meet the statutory requirements. Id. 
          The report here fails to provide a fair summary of how Longino breached the
applicable standard of care. That report states in pertinent part as follows:
In consultation with Dr. James Longino, Dr. Cameron ordered a blood
culture, basic blood tests, IV fluids, IV Claforan antibiotics (1st given around
12 midnight), and admitted Ashton to the hospital with a presumptive
diagnosis of dehydration and enteritis. During this encounter, a prudent
physician would have at least become alarmed by Ashton's symptoms, would
have promptly performed a diagnostic lumbar puncture, and would have
aggressively initiated treatment with the appropriate combination of
antibiotics.
 
. . . .
 
Dr. Cameron['s] and Dr. Longino's care of Ashton Crosswhite fell
below the standard of care for the emergency diagnosis and treatment of
bacterial meningitis in a child. Their failure to either recognize or
acknowledge the obvious symptoms of fever, altered mental status, and neck
pain; to perform a timely diagnostic lumbar puncture; and to aggressively
treat Ashton's bacterial meningitis with an appropriate combination of
antibiotics led to an unnecessary exacerbation of his symptoms. 
Subsequently, this prolonged symptomatology was a cause of Ashton's
significant and permanent neurological injuries.

          "While a 'fair summary' is something less than a full statement of the applicable
standard of care and how it was breached, a fair summary must set out what care was
expected, but not given." Palacios, 46 S.W.3d at 879. The Texas Supreme Court stated
that "whether a defendant breached his or her duty to a patient cannot be determined
absent specific information about what the defendant should have done differently." Id. at
880. In Jones v. Ark-La-Tex Visiting Nurses, this Court held that the trial court did not
abuse its discretion in dismissing a case against several nurses because the expert report
failed to differentiate between the nurses and the doctors, and complained of an act not
within the control of the nurses. 128 S.W.3d 393, 397 (Tex. App.—Texarkana 2004, no
pet.). Similarly, in this case, the expert report fails to differentiate between the conduct of
Cameron and Longino, and the complained-of conduct occurred while Cameron was the
treating physician. The report contains no specific information concerning how Longino
breached the standard of care apart from Cameron's conduct. The report, therefore, is not
a good-faith effort as to Longino.
          In addition, the expert's report must contain information on causation. It is not
enough for a report to contain conclusory insights about the plaintiff's claims. Moore v.
Sutherland, 107 S.W.3d 786, 790 (Tex. App.—Texarkana 2003, pet. denied); Wright, 79
S.W.3d at 52. Rather, the expert must explain the bases of the statements and link his or
her conclusions to the facts. Wright, 79 S.W.3d at 52. The report here only states that the
delay in diagnosis caused significant and permanent neurological injuries. An expert report
must show causation beyond mere conjecture. Id. The report in this case contains mere
conclusions concerning causation.
          Palacios makes it clear that a claimant must present specific evidence in a medical
report because "knowing what specific conduct the plaintiff's experts have called into
question is critical to both the defendant's ability to prepare for trial and the trial court's
ability to evaluate the viability of the plaintiff's claims." Palacios, 46 S.W.3d at 876–77. 
Thus, in the language of Palacios, the expert report here fails to "inform the defendant of
the specific conduct the plaintiff has called into question." See id. at 879. In the absence
of specific information concerning Longino's conduct and only conclusory statements
concerning causation, the trial court abused its discretion by finding that the expert report
constituted a good-faith effort.
          For the reasons stated, we reverse the judgment of the trial court and remand for
further proceedings consistent with this opinion.





                                                                Donald R. Ross
                                                                Justice

Date Submitted:      December 19, 2005
Date Decided:         January 27, 2006