**Edward F. GROUP, III, D.C., Appellant**

v.

**Mark VICENTO, Appellee.**

**No. 14–04–00908–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

May 10, 2005.

Michele Quattlebaum and Tammy Savidge–Moore, Houston, for appellants.

R. Gary Stephens and Maggie D. Conner, Houston, for appellees.

Panel consists of Justices ANDERSON, HUDSON, and FROST.

## OPINION

JOHN S. ANDERSON, Justice.

In this medical malpractice case, appellant appeals the trial court's denial of his motion to dismiss challenging the sufficiency of the appellee's expert report. In a single issue, appellant argues the trial court erred in denying his motion to dismiss as a matter of law because the appellee's expert is not qualified to render an opinion regarding the chiropractic standard of care under Chapter 74 of the Texas Civil Practice and Remedies Code. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellee Mark Vicento, a police officer, was injured in an automobile accident in September 2001. Vicento immediately sought treatment for his injuries at a chiropractic clinic. Appellant Edward F. Group, III, D.C., a chiropractor, treated Vicento's injuries. In November 2001, Group referred Vicento for an MRI (magnetic resonance imaging) of the lumbar spine. Group continued to treat Vicento over the next year. In 2003, Vicento underwent back surgery.

Vicento contends Group should have referred him to an expert spine surgeon for specialized treatment upon reviewing his MRI results in November 2001,[1] and Group's failure to do so delayed Vicento's eventual surgery for approximately one year, exacerbating his injuries. Vicento filed this medical malpractice lawsuit against Group in January 2004, alleging claims of medical negligence. Specifically, Vicento claims Group "was negligent in failing to comply with the standard of care by failing to timely and adequately (i) test, (ii) assess, (iii) diagnose, (iv) treat, and (v) refer [Vicento] to a specialist when his condition worsened and deteriorated." Vicento asserts Group should have known his condition was such that he needed a specialist for treatment, and he contends Group's negligent acts and omissions delayed his spine surgery for a period of approximately two years, thereby aggravating his condition.

Vicento timely filed the expert report of Rezik Saqer, M.D., pursuant to Texas Civil Practice and Remedies Code section 74.351. See Tex. Civ. Prac. & Rem.Code Ann. § 74.351 (Vernon 2005). In response, Group filed a motion to dismiss Vicento's case on the ground that Dr. Saqer's expert report did not comply with section 74.351 of the Texas Civil Practice and Remedies Code. Group alleged in his motion to dismiss that Dr. Saqer was not qualified to opine on the chiropractic standard of care and Dr. Saqer's expert report was inadequate. Group requested the trial court to order Vicento to cure the deficiency within 30 days or dismiss Vicento's cause of action. The trial court ordered Vicento to file a report complying with the statute within thirty days.

Vicento timely filed an amended expert report by Dr. Saqer. Group responded by filing a motion re-urging his prior motion to dismiss, arguing the amended expert report is deficient because (1) Dr. Saqer is not qualified to render an opinion on the chiropractic standard of care because he does not fit the statutory definition of "practicing health care" and is not qualified "on the basis of training and experience" as these terms are defined by section 74.402 of the Texas Civil Practice and Remedies Code, (2) Dr. Saqer's report does not state how Group deviated from the chiropractic standard of care, and (3) Dr. Saqer's report fails to comply with section 74.403 in failing to state how Group's actions caused any injury to Vicento.

The trial court denied Group's second motion to dismiss. Group filed this interlocutory appeal from the trial court's order.[2]

---

1. The MRI report showed herniated lumbar discs with significant spine and foramen stenosis at four different lumbar spine levels.

2. Texas Civil Practice and Remedies Code section 51.014 permits an interlocutory appeal to be filed from an order of a district court that denies all or part of the relief sought by a motion under section 74.351(b) of the Texas Civil Practice and Remedies Code. Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(9) (Vernon Supp.2005). Group's motion to dismiss sought relief under section 73.351(b) and alleged Vicento's expert report was deficient. See Tex. Civ. Prac. & Rem.Code Ann. § 74.351(b).

## DISCUSSION

### A. Standard of Review

■ We review a trial court's decision on a motion to dismiss a case under Texas Civil Practice and Remedies Code section 74.351 for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 875 (Tex.2001) (holding trial court's decision to dismiss a case under former article 4590i, section 13.01(e) (predecessor to Texas Civil Practice and Remedies Code section 74.351) is reviewed for an abuse of discretion).

### B. Expert Reports and Texas Civil Practice and Remedies Code Section 74.351

In 2003, the Texas Legislature enacted significant changes in the expert report requirement for medical malpractice cases. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 74.001–.507 (Vernon 2005) (effective September 1, 2003, formerly article 4590i of the Texas Revised Civil Statutes, the Medical Liability and Insurance Improvement Act). Section 74.351 of the Texas Civil Practice and Remedies Code requires a plaintiff who files a "health care liability claim" to file an expert report within 120 days of filing its claim:

> (a) In a health care liability claim, a claimant shall, not later than the 120th day after the date the claim was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. The date for serving the report may be extended by written

agreement of the affected parties. Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a). A "health care liability claim" is defined as "a cause of action *against a health care provider or physician* for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract." TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(13) (Vernon 2005) (emphasis added). Chiropractors fall under the definition of a "health care provider." TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(12)(A)(v).

Under section 74.351(*l*), "[a] court shall grant a motion challenging the adequacy of an expert report only it if appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report...." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(*l*). An "expert report" is defined as:

> [A] written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider

---

Section 74.351(b) permits a trial court to award a defendant health care provider reasonable attorney's fees and costs and to dismiss a plaintiff's claims if an expert report is not timely served. *See id.* An expert report

"has not been served" for purposes of section 74.351(b) if elements of the report are found deficient. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(c).

failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6).

**C. Qualifications of an Expert Witness in a Suit Against a Health Care Provider and Texas Civil Practice and Remedies Code Section 74.402**

An expert providing opinion testimony about how a "health care provider," such as chiropractor Group, departed from accepted standards of health care must be qualified to testify under the requirements of section 74.402. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(5)(B). Section 74.402(b) lists three specific qualifications an expert witness must possess in order to provide opinion testimony on how a health care provider departed from accepted standards of health care:

(b) In a suit involving a health care liability claim against a health care provider, a person may qualify as an expert witness on the issue of whether the health care provider departed from accepted standards of care only if the person:

(1) is *practicing health care* in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;

(2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

(3) is *qualified on the basis of training or experience* to offer an expert opinion regarding those accepted standards of health care.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.402(b) (Vernon 2005) (emphasis added). The above emphasized terms are specifically defined in subsections (a) and (c) of section 74.402. "Practicing health care" is defined as *including:*

(1) training health care providers *in the same field* as the defendant health care provider *at an accredited educational institution;* or

(2) serving as a consulting health care provider and *being licensed, certified, or registered in the same field* as the defendant health care provider.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.402(a)(1), (2) (emphasis added). To determine whether an expert "is qualified on the basis of training or experience" under subsection (b)(3), a court is to consider whether the expert:

(1) is certified by a licensing agency of one or more states of the United States or a national professional certifying agency, or has other substantial training or experience, in the area of health care relevant to the claim; and

(2) is actively *practicing health care* in rendering health care services relevant to the claim.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.402(c)(1), (2) (emphasis added).

Section 74.402(d) provides a court "shall apply" the criteria specified in section 74.402(a)-(c) in determining whether an expert is qualified to offer expert testimony on the issue of whether a defendant health care provider departed from accepted standards of health care. TEX. CIV. PRAC. & REM.CODE ANN. § 74.402(d). A court may depart from the criteria if, under the circumstances, there is good reason to admit

the expert's testimony, but if the court departs from the criteria, the court shall state on the record the reason for admitting the testimony. *Id.* Here, the trial court's order denying Group's motion to dismiss does not state the court departed from section 74.402's criteria.

■ In contrast to an expert who provides opinion testimony about how a health care provider departed from accepted standards of health care, an expert who provides opinion testimony about the *causal* relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care in a health care liability claim *must be a physician* who is otherwise qualified to render opinions on such a causal relationship under the Texas Rules of Evidence. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 74.351(r)(5)(C), 74.403(a) (Vernon 2005).

This is a case of first impression under newly enacted section 74.402.

### D. Group's Motion to Dismiss

Group argues the trial court erred in denying his motion to dismiss because Dr. Saqer is not qualified to render an expert opinion regarding the chiropractic standard of care. Group's challenges to Dr. Saqer's qualifications focus on section 74.402, subsections (a), (b)(1), (3) and (c)(2).[3] First, Group asserts Dr. Saqer is not statutorily qualified to render an opinion regarding the chiropractic standard of

care or a breach thereof because he is not "practicing health care" as defined by section 74.402(a). Group contends section 74.402(a) requires Dr. Saqer to be (1) practicing health care in a field of practice involving the same type of care or treatment as Group, the field of chiropractic, (2) licensed as a chiropractor, or (3) teaching chiropractic at an accredited chiropractic school. Second, Group argues Dr. Saqer is not qualified "on the basis of training or experience" under section 73.402(b)(3) because he is not a chiropractor and is not actively "practicing health care" in the field of chiropractic.

In response, Vicento asserts the trial court's denial of Group's motion to dismiss was proper because Dr. Saqer's expert report demonstrates he has the requisite knowledge, skill, experience, training, and education regarding the treatment of patients with conditions similar to Vicento's to qualify him as an expert as to the standard of care and causation in this case. Vicento contends Dr. Saqer's report establishes he practices health care in a field that involves the same type of care and treatment as that delivered by Group, and he has expertise in the particular areas involved in this case. Vicento further asserts section 74.402 *does not require* an expert in a suit against a chiropractor *to be* a chiropractor in order to be qualified to opine on the standard of care.[4]

---

3. In his motion to dismiss, Group also complained Dr. Saqer's report does not state how Group deviated from the chiropractic standard of care, and Group challenged Dr. Saqer's qualifications to render an expert opinion on causation, under section 74.403, arguing Dr. Saqer's testimony was not based on a reasonable medical probability. On appeal, Group has abandoned these two grounds for dismissal.

4. In *Nicodeme v. Bailey*, 243 S.W.2d 397, 399–402 (Tex.Civ.App.-El Paso 1951, writ

ref'd n.r.e.), two physicians testified on behalf of a patient in a medical malpractice suit the patient filed against a chiropractor. The court held the patient's evidence failed to establish the chiropractor's negligence was a proximate cause of the plaintiff's injuries. *Nicodeme* does not address the specific issue of the doctors' qualifications to render an opinion against the defendant chiropractor, but the court does acknowledge the chiropractor's conduct should be judged against the chiropractic system of healing. *Nicodeme*, 243 S.W.2d at 401 ("The lawful activity

### 1. Rules of Statutory Construction

■ Statutory construction is a question of law, and we review a trial court's interpretation of a statute under a de novo standard of review. *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002). When interpreting statutes, our primary objective is to ascertain and give effect to legislative intent. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex.1999); *see* TEX. GOV'T CODE ANN. § 311.023 (Vernon 2005). We look first to the plain and common meaning of the language of the statute. *Fitzgerald*, 996 S.W.2d at 865; *see* TEX. GOV'T CODE ANN. § 311.011 (Vernon 2005). We must read the statute as a whole and not just isolated portions. *Tex. Dep't. of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex.2004). If the meaning of the statutory language is unambiguous, we must interpret it according to its terms, giving meaning to the language consistent with other provisions in the statute. *Id.* We read every word as if it were deliberately chosen and presume that omitted words were excluded purposefully. *See Cornyn v. Universe Life Ins. Co.*, 988 S.W.2d 376, 378–79 (Tex.App.-Austin 1999, pet. denied). We also consider the objective the law seeks to obtain and the consequences of a particular construction. *Sunset Valley*, 146 S.W.3d at 642.

We apply the above principles in construing section 74.402, and we examine Dr. Saqer's qualifications in light of section 74.402's requirements.

### 2. Section 74.402(a) and (b)(1): "Practicing Health Care"

First, under section 74.402(b)(1), to qualify as an expert witness on the issue of whether Group departed from accepted standards of care, Dr. Saqer must be "practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose." TEX. CIV. PRAC. & REM.CODE ANN. § 74.402(b)(1).

Group argues the term "practicing health care" as defined by subsection (a) *requires* a qualified expert in a chiropractic malpractice case to either be a chiropractor, train chiropractors at an accredited educational institution, or serve as a consulting health care provider to chiropractors and be licensed, certified, or registered as a chiropractor. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.402(a)(1), (2) ("For purposes of [section 74.402], 'practicing health care' *includes:* (1) training health care providers in the same field as the defendant health care provider at an accredited educational institution; or (2) serving as a consulting health care provider and being licensed, certified, or registered in the same field as the defendant health care provider.") (emphasis added). Group contends Dr. Saqer does not meet the statutory definition of "practicing health care." In response, Vicento argues Dr. Saqer's report demonstrates he has

---

of a chiropractor is confined to the treatment of the spine in a certain manner. In substance, the treatment is limited to the adjustment of the joints or vertebrae of the spine.").

Other cases cited by Vicento in his brief involve medical malpractice claims brought against physicians analyzing whether expert physicians who do not specialize in the same area as a defendant physician are qualified to

render an expert opinion. *See, e.g., Roberts v. Williamson*, 111 S.W.3d 113 (Tex.2003); *Broders v. Heise*, 924 S.W.2d 148 (Tex.1996); *Silvas v. Ghiatas*, 954 S.W.2d 50 (Tex.App.-San Antonio 1997, pet. denied). These cases do not apply newly enacted section 74.402, but they are nevertheless instructive and provide guidance on the issue presented.

adequate knowledge, skill, experience, training, and education regarding his treatment of patients with conditions similar to Vicento's to qualify him as an expert under subsection (b)(1).

■ Group's asserted construction of section 74.402, subsections (a)(1)-(2) and (b)(1), improperly limits and confines the definition of the term "practicing health care." Subsection (a) uses the term "includes" in defining "practicing health care." Although Chapter 74 does not define the term "includes," the Code Construction Act defines "includes" as a term "of enlargement and not of limitation or exclusive enumeration, and use of [includes] does not create a presumption that components not expressed are excluded." TEX. GOV'T CODE ANN. § 311.005(13) (Vernon 2005); *see Jackson Law Office, P.C. v. Chappell,* 37 S.W.3d 15, 25–26 (Tex.App.-Tyler 2000, pet. denied). Thus, section 74.402(a)'s two definitions of "practicing health care" are not exclusive.

In addition, under the literal language of section 74.402(b)(1), an expert is only required to be "practicing health care *in a field of practice that involves the same type of care or treatment* as that delivered by the defendant health care provider." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.402(b)(1) (emphasis added). Subsec-

tion (b)(1) does not require an expert to be practicing health care *in the same field* as the defendant health care provider, here, the field of chiropractic. Instead, under subsection (b)(1), the expert only must practice health care in a field of practice *involving the same type of care or treatment.*[5]

Reading section 74.402 subsections (a) and (b)(1) together, subsection (a) expands upon the definition of "practicing health care" to *include* qualified teachers and consulting health care providers who may not otherwise be qualified under subsection (b)(1) because they are not *practicing* health care and instead teach or consult. Group's proffered construction of subsection (a) and (b)(1) results in a person being qualified as an expert *only if* the person trains health care providers *in the same field* as the defendant health care provider *or* if the person serves as a consulting health care provider and is licensed, certified, or registered in the same field as the defendant health care provider. According to Group, if a person practices health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, but the person is not certified in the same field of practice as the defendant

---

**5.** A conference committee report on House Bill 4 conducts a side-by-side comparison of the Texas House of Representatives' version of the bill with the Senate's version. CONFERENCE COMM. REPORT, Tex. H.B. 4, 78th Leg., R.S. (2003). The report shows the House's version of section 74.402(b)(1) stated a person may qualify as an expert under that subsection if the person "(1) is practicing health care *in the same field of practice as the defendant health care provider* ...." In contrast, the Senate's version of subsection (b)(1) stated a person may qualify as an expert if the person "(1) is practicing health care *in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health*

*care provider is an individual* ...." The Conference Committee on House Bill 4 adopted the Senate's version, which *does not* require a qualified expert to practice *in the same field* as the defendant health care provider, and this version was enacted into law. *See id.* The difference in the wording between the House and Senate versions may be due to concerns expressed by individuals who testified at public hearings conducted by the Senate State Affairs Committee on House Bill 4 regarding potential problems with the "in the same field" language. *Hearings on Tex. H.B. 4 Before the Senate State Affairs Committee,* 78th Leg., R.S. 17–18 (April 15, 2003) (transcript available from Senate Staff Services Office).

health care provider, is not a teacher, or is not a qualified consultant, the person is unqualified.

Group's asserted construction of section 74.402(a) is unnecessarily restrictive and is contrary to the plain and common meaning of the language of the statute. Having considered the language of section 74.402 in its entirety, we disagree with Group that the two definitions of "practicing health care" under section 74.402(a) are exclusive.

### 3. Dr. Saqer's Qualifications and Section 74.402

#### a. Section 74.402(b)(1)

■ We now analyze whether Dr. Saqer satisfies the requirements of section 74.402(b)(1). Dr. Saqer's expert report and curriculum vitae reveal he is a licensed medical doctor, an anesthesiologist, who specializes in anesthesia and pain management. He has been practicing anesthesia and pain management in the Houston area for the past seven years. Dr. Saqer is the owner and president of Houston Preferred Anesthesia, a group of anesthesiologists that provide anesthesia services to different hospitals and outpatient surgery centers. He is board eligible by the American Board of Anesthesiologists and a Board Diplomat by the American Academy of Pain Management. He also is the founder and manager of Texas Pain Solutions, which provides invasive and non-invasive

pain services through different hospitals and multiple clinics in the Houston area.

Although Dr. Saqer does not train chiropractors at an accredited educational institution, does not serve as a consulting health care provider to chiropractors, and is not licensed, certified, or registered as a chiropractor,[6] as discussed above, this is not determinative of Dr. Saqer's qualifications under subsection (b)(1). Rather, the focus of our inquiry is whether Dr. Saqer practices health care in a field of practice that involves the same type of care or treatment as that delivered by Group. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.402(b)(1).

In his report, Dr. Saqer states the following with regard to his qualifications:

As a practicing medical doctor specializing in anesthesia and pain management, I know the accepted standard of care required of chiropractors practicing under the same or similar circumstances as was Chiropractor Edward F. Group during the past seven years. As a pain specialist, I treat patients with all types of pain, including be [sic] related to work, motor vehicle accident, arthritis, cancer pain, or post-surgical pain. I treat on average more than 100 patients every week, and more than 20% of them suffer from conditions similar to Mr. Vicento. I know the accepted standard of care required of chiropractors regard-

---

6. Under the Occupations Code, "[a] person practices chiropractic" ... if the person:

  (1) uses objective or subjective means to analyze, examine, or evaluate the biomechanical condition of the spine and musculoskeletal system of the human body;

  (2) performs nonsurgical, nonincisive procedures, including adjustment and manipulation, to improve the subluxation complex or the biomechanics of the musculoskeletal system;

  (3) represents to the public that the person is a chiropractor; or

(4) uses the term "chiropractor," "chiropractic," "doctor of chiropractic," "D.C.," or any derivative of those terms or initials in connection with the person's name.

TEX. OCC.CODE ANN. § 201.002(b) (Vernon 2004). The statute further provides the practice of chiropractic *does not* include incisive or surgical procedures, the prescription of controlled substances, dangerous drugs, or any other drug that requires a prescription, or the use of x-ray therapy or therapy that exposes the body to radioactive materials. TEX. OCC.CODE ANN. § 201.002(c).

ing the type of injury and treatment involved in this case, because my specialty overlaps and intertwines with chiropractic practice. Specifically, I engage in modalities of treatment, which include but are not limited to pain management modalities. These areas include but are not limited to the following:

1. Massage Therapy;
2. Oscillation of pain centers;
3. Relief of complications of muscle spasms;
4. Neurological pain causation;
5. Accupuncture treatment;
6. Modern methods of physical therapy.

These are the same areas that chiropractors use to manipulate and treat patients. For example, massage therapy includes, but is not limited to: [i] increasing circulation to promote healing, [ii] relieving cramps and muscle spasm, [iii] pain relief of spinal injuries and headaches by decreasing muscle tension, [iv] manipulating limbs and the spine to relieve impingement of nerve roots and other complications from injuries, and [v] manipulation of the body to increase mobility due to the effects of degenerative disc disease and the aging process. These treatments are utilized by chiropractors and pain management physicians alike.

Additionally, chiropractors and pain management physicians use similar methods to evaluate patients and determine whether to refer them to a specialist for surgical consultation. For example, during massage therapy, I often become aware of other additional needs in connection with pain management. Some of the methodology indicates an absence of pain in certain manipulations of the human body which further delineates the nature and extent of the inju-

ry. By performing pain management methods, either by way of injection, manipulation, or massage, I am able to further isolate the cause of the injury and then concentrate on alleviation of the pain by non-surgically treating the area of the injury which is causing the pain in the arm and the hand or by referring for surgical intervention, if needed.

A chiropractor, though he cannot do or perform injections, utilizes similar methodology in making determinations as to the cause of pain. It is ... during that determination/diagnostic period that a chiropractor should become aware of the need to send that patient for further and additional medical care and treatment that is more sophisticated than he either legally or ethically can perform.

I am qualified to do and perform many of the same things that chiropractors are competent to do and perform, but my level of expertise, by reason of my training, experience and education, enables me to perform a magnitude of other procedures that chiropractors cannot use. As a pain management physician I work closely together with chiropractors; I have supervised chiropractors, evaluated patients of chiropractors, been assisted by chiropractors and taught chiropractors modern pain relief methodology. It is by reason of this overlapping area between chiropractic measures and pain management areas that I am qualified to testify regarding chiropractic procedures. Specifically, because determining when to refer a patient for neurosurgical consultation is common to both pain management and chiropractic, I am qualified to testify as to the standard of care for referral of a patient to a specialized spine surgeon.

We conclude, based on the foregoing, Dr. Saqer is "practicing health care" in a field of practice that involves the same type of care or treatment as chiropractor Group. Accordingly, Dr. Saqer satisfies section 74.402(b)(1)'s requirements.

### b. Section 74.402(b)(2)

Under section 74.402(b)(2), Dr. Saqer must have "knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim." TEX. CIV. PRAC. & REM.CODE ANN. § 74.402(b)(2). On appeal, Group does not specifically argue Dr. Saqer does not satisfy subsection (b)(2). Dr. Saqer explains in his report he has knowledge of the accepted standards of care for chiropractors for the diagnosis, care, and treatment of the type of injury involved in this claim. Thus, Dr. Saqer satisfies section 74.402(b)(2).

### c. Section 74.402(b)(3)

Finally, we examine whether Dr. Saqer satisfies the third requirement set forth in section 74.402(b)(3), that he be "qualified on the basis of training or experience to offer an expert opinion regarding ... accepted standards of health care." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.402(b)(3). To determine whether an expert is qualified "on the basis of training or experience," subsection (c) of the statute instructs courts to consider whether the expert "(1) is certified by a licensing agency of one or more states of the United States or a national professional certifying agency, or has other substantial training or experience in the area of health care relevant to the claim; and (2) is actively *practicing health care* in rendering health care services relevant to the claim." TEX. CIV. PRAC. & REM.CODE ANN. § 74.402(c)(1)-(2) (emphasis added).

Dr. Saqer states in his report that he has experience in the area of chiropractic, his "specialty overlaps and intertwines with chiropractic practice," and 20% of his patients suffer from injuries similar to Mr. Vicento's. In addition, Dr. Saqer states he is a licensed physician practicing anesthesiology and pain management. Dr. Saqer satisfies subsection (c)(1).

With regard to subsection (c)(2), Group argues Dr. Saqer does not satisfy this subsection because he is not "practicing health care." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(c)(2). Subsection(c)(2) inquires whether the person "is actively practicing health care in rendering health care services relevant to the claim." *Id.* As discussed above with regard to subsection (b)(1), Dr. Saqer's expert report shows he is actively practicing health care services relevant to Vicento's claim. Thus, he satisfies subsection (c)(2).

Having concluded Dr. Saqer satisfies both prongs of subsection (c), he, therefore, is qualified on the basis of training or experience under subsection (b)(3) to offer an expert opinion regarding accepted chiropractic standards of care.

### CONCLUSION

Dr. Saqer satisfies the requirements of section 74.402(b)(1)-(3). Accordingly, we hold the trial court did not abuse its discretion in denying Group's motion to dismiss Vicento's expert report and overrule appellant's sole issue.

We affirm the trial court's order denying appellant's motion to dismiss.