Affirmed and Opinion filed June 28, 2007






Affirmed and Opinion filed June 28, 2007.
 
 
In The
 
Fourteenth Court of 
Appeals
____________
 
NO. 14-05-01028-CV
____________
 
MEMORIAL HERMANN HEALTHCARE SYSTEM 
d/b/a MEMORIAL HERMANN SOUTHWEST HOSPITAL and DOMINIC GREGORY SRESHTA, M.D., 
Appellants
 
V.
 
VINCENT BURRELL a/n/f of KATIE 
WHITFIELD, Appellee
 
 
 
On Appeal from the 11th District 
Court
Harris County, Texas
Trial Court Cause No. 04-45729
 
 
 
O P I N I O 
N
This is an interlocutory appeal in a 
health care liability case.  Appellee Vincent Burrell, as next friend of 
Katie Whitefield, sued appellants, Memorial Hermann Healthcare System and Dr. 
Dominic Gregory Sreshta, for medical malpractice.  In two issues, 
appellants challenge the trial court’s denial of their objection to appellee’s 
expert witness report and class=Section2> 
motion to dismiss under section 
74.351 of the Texas Civil Practices and Remedies Code.   We affirm.  
Factual 
and Procedural Background
On November 19, 2002, Katie 
Whitfield, an obese woman suffering from Alzheimer’s, was brought to the 
Memorial Hermann Southwest Hospital emergency room and admitted to the 
hospital.  While in the hospital, she was treated by Dr. Dominic 
Sreshta.  Whitfield was discharged from the hospital on November 25.  
Whitfield alleges she developed decubitus ulcers (bedsores) in her sacral area 
because of substandard care received at the hospital.  After filing suit, 
appellee filed an expert report by Dr. Thomas Winters pursuant to Chapter 74 of 
the Texas Civil Practice and Remedies Code.  Appellants filed a motion to 
dismiss for failure to comply with section 74.351.  The trial court denied appellants’ motion and found Dr. Winters 
qualified to provide an expert report in this case.  In its order, the 
trial court ruled, alternatively, “that [appellee] has made an objective good 
faith effort to comply with the definition of an expert report as required by 
relevant statute such that this Court would grant an extension for [appellee] to 
comply with the statute if it found or if a reviewing Court were to find that 
Dr. Winters’ report does not comply with the statute.”  Appellants filed 
this interlocutory appeal pursuant to section 51.014(a)(9) of the Texas 
Civil Practice and Remedies Code.  
Discussion
I. 
         Issues Presented
            
Appellants present two issues on appeal: (1) whether appellee’s expert is 
qualified to file an expert report under section 74.351 of the Texas Civil 
Practices and Remedies Code; and (2) if not, whether appellee is entitled to an 
extension of time to cure the expert report.  
II. 
       Standard of Review
            
We review a trial 
court’s determination that an expert is qualified under an abuse of discretion 
standard.  Broders v. Heise, 924 S.W.2d 148, 151–52 (Tex. 1996); 
Group v. Vicento, 164 S.W.3d 724, 727 (Tex. App.—Houston [14th Dist.] 
2005, pet. filed).  Appellee, as the proponent of the expert, has the 
burden to show that the expert is qualified and the expert report satisfies the 
statutory requirements.  See Olveda v. Sepulveda, 141 S.W.3d 679, 
682–83 (Tex. App.—San Antonio 2004, pet. denied).  The trial court abuses 
its discretion if it acts in an arbitrary or unreasonable manner without 
reference to any guiding rules or principles.  Cire v. Cummings, 134 
S.W.3d 835, 838–39 (Tex. 2004).  We may not reverse a trial court’s 
discretionary ruling simply because we might have decided it differently.  
See Walker v. Gutierrez, 111 S.W.3d 56, 62 (Tex. 2003) (construing former 
statute).  
III.       
Is Dr. Winters Qualified As An Expert?
In appellants’ first issue, they 
contend appellee failed to comply with section 74.351 of the Texas Civil 
Practice and Remedies Code because (1) Dr. Winters is not qualified as an expert 
under section 74.402, and (2) Dr. Winters is not qualified to testify about 
causation under Rule 702 of the Texas Rules of Evidence. 
A.        What evidence 
may this court consider when determining if a party complied with Section 
74.351?
Before addressing the merits of 
appellants’ argument that Dr. Winters is not qualified as an expert, we must 
determine what evidence we may consider in our analysis.  In support of 
their argument, appellants refer us to excerpts from Dr. Winters’ depositions in 
other cases, the affidavit of Dr. Vartian, and standards promulgated by the 
Infectious Diseases Society of America.  However, our analysis of the 
qualifications of an expert under section 74.351 is limited to the four corners 
of the expert’s report and curriculum vitae.   See Am. Transitional 
Care Ctrs. of Tex. v. Palacios, 46 S.W.3d 873, 878 (Tex. 2001) (holding 
issue of compliance of an expert report with the substantive requirements of 
former article 4590i class=Section3> 
is determined on the basis of 
information contained within the four corners of the report); Randalls Food 
& Drugs, L.P. v. Kocurek, No. 14-05-01184-CV, 2006 WL 2771872, at *2–3 
(Tex. App.—Houston [14th Dist.] Sept. 28, 2006, no pet.) (mem op.) (applying 
four corners rule in determining the qualifications of an expert under section 
74.351); Fontenot Enter., Inc. v. Kronick, No. 14-05-01256-CV, 2006 WL 
2827415, at *4 (Tex. App.—Houston [14th Dist.] Oct. 5, 2006, no pet.) (mem op.) 
(applying four corners rule in determining the qualifications of an expert under 
section 74.351).  Therefore, we consider only Dr. Winters’ report and 
curriculum vitae to determine whether he is qualified as an expert under section 
74.351.  (We have attached a complete copy of Dr. Winters’ expert report as 
an appendix to this opinion.)
B.        
Section 74.402
Appellants contend Dr. Winters is not 
qualified as an expert under the requirements set forth in section 74.402 of the 
Texas Civil Practice and Remedies Code.  An expert providing opinion 
testimony regarding whether a health care provider departed from the accepted 
standards of health care must satisfy the requirements set forth in section 
74.402. Tex. Civ. Prac. & Rem. Code 
Ann. § 74.351(r)(5)(B) (Vernon Supp. 2005).  Section 74.402 
provides:
(b) In a suit involving a health care liability claim 
against a health care provider, a person may qualify as an expert witness on the 
issue of whether the health care provider departed from accepted standards of 
care only if the person:
(1) is practicing health care in a field of practice 
that involves the same type of care or treatment as that delivered by the 
defendant health care provider, if the defendant health care provider is an 
individual, at the time the testimony is given or was practicing that type of 
health care at the time the claim arose;
(2) has knowledge of accepted standards of care for 
health care providers for the diagnosis, care, or treatment of the illness, 
injury, or condition involved in the claim; and
class=Section4> 
(3) is qualified on the basis of training or experience 
to offer an expert opinion regarding those accepted standards of health 
care.
Tex. Civ. 
Prac. & Rem. Code Ann. § 74.402(b) (Vernon 
2005).   In determining whether a witness is qualified “on the basis 
of training or experience,” the court shall consider whether, at the time the 
claim arose or at the time the testimony is given, the witness:
 
(1) is certified by a licensing agency of one or more 
states of the United States or a national professional certifying agency, or has 
other substantial training or experience, in the area of health care relevant to 
the claim; and
(2) is actively practicing health 
care in rendering health care services relevant to the claim.  
Tex. Civ. 
Prac. & Rem. Code Ann. § 74.402(c)(1)–(2). 
            
Appellants specifically challenge Dr. Winters’ qualifications under sections 
74.402(b)(2) and (b)(3).  Appellants first argue Dr. Winters’ expert report 
does not set forth his experience; rather, the report contains only conclusory 
statements that he is “familiar” or has “experience” with the prevention and 
treatment of decubitus ulcers.  See Methodist Health Care Sys. of San Antonio, Ltd. v. 
Rangel, No. 04-05-00500-CV, 2005 WL 
3445994, at *2–3 (Tex. App.—San Antonio Dec. 14, 2005, pet. denied) (mem. 
op.) (holding doctor was not qualified under section 74.402 where expert 
report failed to state how the doctor’s experience on a peer review committee and as an administrative director 
constituted training or experience which qualified him to opine about the 
standard of care at issue); In re Windisch, 138 S.W.3d 507, 513–14 
& n.11 (Tex. App.—Amarillo 2004, orig. proceeding) (holding conclusory 
statements referencing an expert’s qualifications are insufficient to show the 
expert is qualified on the particular subject matter at hand when the expert 
report only tracks the language of the statute and does not bridge the gap 
between his experience and the medical procedure at issue).  Contrary to 
appellants’ contention, Dr. Winters’ expert report provides the following 
description of his experience with decubitus ulcers: “I am familiar with the 
standard of care as it pertains to prevention and treatment of decubitus 
ulcers.  I have class=Section5> 
experience in instructing nurses and 
other personnel in the proper techniques to prevent decubitus ulcers and I have 
treated patients with decubitus ulcers over the course of my practice as an 
infectious disease internist and occupational doctor.”  Dr. Winters’ report 
provides that he has completed a fellowship and practiced for more than 
twenty-five years in the field of infectious disease.  In his curriculum 
vitae, Dr. Winters indicates he has been board certified in occupational 
medicine  since 1992 and board eligible in infectious disease since 
1977.  We reject appellants’ argument that Dr. Winters’ expert report is 
conclusory and  fails to set forth his experience.  
            
Appellants also argue Dr. Winters’ expert report does not show his requisite 
knowledge of decubitus ulcers.  They first cite Forrest v. 
Danielson, 77 S.W.3d 842, 848 (Tex. App.—Tyler 2002, no pet.), a case in 
which the Tyler court of appeals held that a medical doctor was not qualified to 
render an expert opinion because the doctor’s expert’s report did not 
demonstrate experience with the medical procedure at issue or familiarity with 
the applicable standard of care.  The proffered expert in Forrest 
was an orthopedic surgeon, and the procedure at issue was spinal surgery.  
Id. at 846–47.  The expert did not link his experience as an 
orthopedic surgeon to the patient’s spinal surgery, and his expert report 
consisted of a one page letter describing the patient’s medical history and 
opining that surgery was unnecessary.  Id.  Appellants next 
cite Tomasi v. Liao, 63 S.W.3d 62, 65 (Tex. App.—San Antonio 2001, no 
pet.), in which a medical doctor specializing in psychiatry submitted an expert 
report regarding a patient’s post-operative care following neurosurgery.  
The San Antonio court of appeals rejected the expert’s report because his only 
link to the illness at issue was his service on a peer review committee and his 
status as a diplomat of the American Board of Psychiatry and Neurology.  
Id. at 66.  The doctor did not adequately link his experience on the 
peer review committee with the medical treatment at issue by describing his 
committee or diplomat service or why it was relevant.  Id.; see 
also In re Samonte, 163 S.W.3d 229, 237–38 (Tex. App.—El Paso 2005, 
orig. proceeding) (holding proffered expert was not qualified because his expert 
report did not describe his class=Section6> 
qualifications or experience in the 
field of medicine at issue).    Unlike the experts in the cases 
cited by appellants, Dr. Winters does link his experience in his medical 
specialities (internal medicine, occupational medicine, and infectious disease) 
to decubitus ulcers by stating in his report that, over the course of his career 
in each of these three specialities, he has treated patients with decubitus 
ulcers and trained nurses and other personnel in the proper techniques to 
prevent decubitus ulcers. 
            
Under section 74.402(b)(2), appellee must demonstrate that Dr. Winters has 
knowledge of the accepted standards of care for the diagnosis, care, or 
treatment of Ms. Whitfield’s injury or condition.  See Tex. Civ. Prac. & Rem. Code Ann. § 
74.402(b)(2).  In his expert report, Dr. Winters states that he is familiar 
with the standard of care as it pertains to the prevention and treatment of 
decubitus ulcers.  Dr. Winters’ expert report contains a section titled 
“Standard of Care,” which provides clear, fact-based explanations of the 
standards of care applicable to both Memorial Hermann Southwest Hospital and Dr. 
Sreshta.  As it pertains to Memorial Hermann Southwest Hospital, Dr. 
Winters states that the standard of care requires the use of pressure reducing 
mattresses, repositioning of the patient every two hours, and impeccable skin 
care in order to prevent the formation of decubitus ulcers.  As it pertains 
to Dr. Sreshta, Dr. Winters states that the standard of care requires timely and 
appropriate interventions to medically treat decubitus ulcers; specifically, 
upon being informed of a brown, necrotic ulcer 
with odor, the standard of care requires prompt medical evaluation along with a 
CBC, culture of the ulcer, and antibiotic treatment.  Accordingly, 
Dr. Winters’ expert report satisfies the requirements of section 
74.402(b)(2).  See Group v. Vicento, 164 S.W.3d 724, 734 
(Tex. App.—Houston [14th Dist.] 2005, pet. filed) (holding a doctor’s statement 
that he has knowledge of the accepted standard of care for the injury or illness 
at issue satisfies section 74.402(b)(2)).  
            
Under section 74.402(b)(3), appellee must demonstrate Dr. Winters is qualified 
on the basis of training or experience to offer an expert opinion regarding the 
accepted standards of health care.   See Tex. Civ. Prac. & Rem. Code Ann. § 
74.402(b)(3).  To determine whether Dr. Winters is qualified under section 
74.402(b)(3), we consider whether Dr. Winters is (1) certified by a licensing 
agency or has substantial training or experience relevant to the claim, and (2) 
whether he is actively practicing health care relevant to the claim.  
See Id. § 
74.402(c)(1)–(2). 
            
Regarding the first prong of 74.402(c), appellants argue Dr. Winters is not 
board certified in infectious diseases.  A plain reading of the statute 
does not disqualify Dr. Winters because he lacks board certification.  
See id. § 74.402(c)(1).  Dr. Winters may also be qualified under 
section 74.402(c)(1) if he has substantial training or experience in an area of 
health care relevant to the claim.  Id.  Thus, we must 
decide whether, over the more than twenty-five years of practicing medicine, Dr. 
Winters has obtained substantial training or experience relevant to the 
prevention and treatment of decubitus ulcers.  In his report, Dr. Winters 
explains he has trained personnel on the prevention and treatment of decubitus 
ulcers and treated patients with decubitus ulcers over the course of his practice as a 
doctor of internal medicine, occupational medicine, and infectious 
disease.  We know from his curriculum vitae that Dr. Winters is board 
eligible in infectious disease, a fellow in infectious disease, and has relevant 
teaching experience (Primary Care Practice Teaching, Medical Ward Attending, 
Attending Infectious Disease Service, and Occupational Medicine Clinic 
Attending).  Based on information about his past and present experience 
relevant to infectious diseases, and particularly decubitus ulcers, we conclude 
Dr. Winters has substantial training or experience in an area of health care 
relevant to appellee’s claim.  Therefore, Dr. Winters is qualified under 
section 74.402(c)(1).  
            
Regarding the second prong of section 74.402(c), appellants contend Dr. Winters 
is not actively practicing health care in an area relevant to appellee’s 
claim.  Appellants argue that because Dr. Winters currently practices 
occupational medicine, he is not qualified to render an opinion about the 
diagnosis and treatment of decubitus ulcers.  Appellants cite a sampling of 
cases in which occupational doctors testified about exposure to hazardous 
chemicals, lead, or silica dust, or an individual’s ability to return to work 
after injury.[1]  
Appellants argue that Dr. Winters, as a doctor of occupational medicine, would 
be qualified as an expert only on similar topics.  Appellants’ argument is 
unpersuasive.[2]  
The cases cited by appellants do not hold that a doctor practicing occupational 
medicine cannot testify about decubitus ulcers.  Moreover, our analysis is 
not based on the types of cases in which occupational doctors have testified or 
even whether Dr. Winters is in the same field of practice as appellants; rather, 
our analysis under section 74.402(c)(2) focuses on the issue of whether Dr. 
Winters is actively practicing health care in rendering health care services 
relevant to decubitus ulcers.  See id. § 74.402(c)(2).
            
Section 74.402 
broadly defines “practicing health care” as including “(1) training health care providers in the 
same field as the defendant health care provider at an accredited educational 
institution; or (2) serving as a consulting health care provider and being 
licensed, certified, or registered in the same field as the defendant health 
care provider.”  Id. § 
74.402(a)(1)–(2).  In his expert report, Dr. Winters states that he has 
treated patients with decubitus ulcers in his practice as an occupational 
doctor.  Dr. Winter’s curriculum vitae indicates he is currently employed 
as medical director of occupational and environmental health at both Quincy 
Hospital and Milton Hospital.  He is the current chief of 
occupational medicine at New England Baptist Hospital, and the medical director 
of occupational and employee health for Cape Cod Health Care Systems.  Dr. 
Winters is also currently training health care providers in the field of 
occupational and environmental health in his capacity as a guest lecturer at the 
Harvard School of Public Health.  Based on Dr. Winters’ expert report and 
curriculum vitae, we conclude that Dr. Winters is actively practicing health 
care in rendering health care services relevant to appellee’s claim. See id. § 
74.402(c)(2).  Accordingly, appellee has satisfied the 
requirements of 74.402(b)(3).
            
We hold the trial court did not abuse its discretion in determining that Dr. 
Winters’ expert report and curriculum vitae satisfy the requirements of sections 
74.402(b)(2) and (b)(3). 
C.        
Texas Rule of Evidence 702
Appellants next  argue Dr. 
Winters is not qualified to render an expert opinion on the issue of causation 
because he does not have sufficient expertise in the prevention and treatment of 
decubitus ulcers.  Section 74.351(r)(5)(C) of the Texas Civil Practice and 
Remedies Code requires “a person giving opinion testimony about the causal 
relationship between the injury, harm, or damages claimed and the alleged 
departure from the applicable standard of care in any health care liability 
claim” to be qualified under the Texas Rules of Evidence.  Tex. Civ. Prac. & Rem. Code Ann. § 
74.351(r)(5)(C).  Texas Rule of Evidence 702 states: “If scientific, 
technical, or other specialized knowledge will assist the trier of fact to 
understand the evidence or to determine a fact in issue, a witness qualified as 
an expert by knowledge, skill, experience, training, or education may testify 
thereto in the form of an opinion or otherwise.”   Tex. R. Evid. 702.   The 
trial court makes the initial determination about whether the expert and the 
proffered testimony meet these requirements.  E.I. du Pont de Nemours 
& Co. v. Robinson, 923 S.W.2d 549, 556 (Tex. 1995).  The trial 
court has broad discretion to determine admissibility, and we will reverse only 
if there is a clear abuse of discretion shown.  Gammill v. Jack Williams 
Chevrolet, Inc., 972 S.W.2d 713, 718–19 (Tex. 1998). 
There are no definitive guidelines 
for determining whether a witness’s education, experience, skill, or training 
qualify him as an expert.  State v. Northborough Ctr., Inc., 987 
S.W.2d 187, 193 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).  The 
party offering the witness as an expert must establish that the witness is 
qualified to testify under Rule 702 by demonstrating the witness has expertise 
concerning the actual subject matter about which the party is offering an 
opinion.  Helena Chem. Co. v. Wilkins, 47 S.W.2d 486, 498 (Tex. 
2001); Broders, 924 S.W.2d at 153.  
 Dr. Winters is board certified 
in internal medicine and occupational medicine.  He has twenty-five years 
of experience as a medical doctor, including direct experience in treating 
patients with decubitus ulcers and instructing nurses and other personnel in the 
proper techniques to prevent decubitus ulcers.  Based on Dr. Winters’ 
education, training, and experience, as set forth in his expert report and 
curriculum vitae, we conclude that Dr. Winters satisfies the requirements of 
Rule 702 and is qualified to render an expert opinion on causation in this case 
pursuant to section 74.351(r)(5)(C).  We overrule appellants’ argument 
pertaining to Rule 702. 
Appellants’ first issue is overruled. 

IV.       
Extension of Time
In their second issue, appellants 
contend appellee should not be entitled to an extension of time because filing a 
deficient expert report is the equivalent of filing no report at all.  
Because we affirm the judgment of the trial court denying appellants’ motion to 
dismiss, find appellee’s expert qualified, and his expert report satisfies all 
requisite criteria, we need not reach appellants’ second issue. See Tex. R. App. P.  47.1. 
Conclusion
We overrule appellants’ first issue 
and hold the trial court did not abuse its discretion in finding Dr. Winters 
qualified to provide an expert report in this case.  We do not consider 
appellants’ second issue as to whether appellee is entitled to an extension of time to cure the allegedly deficient 
expert report.  We affirm the judgment of the trial court.  

                                                                                                

 
 
                                                                                    

                                    
                                    
/s/        John S. Anderson
                                                                                    
Justice
 
 
                                                

 
Judgment rendered and Opinion filed 
June 28, 2007.
Panel consists of Justices Anderson, 
Edelman, and Frost.
APPENDIX

 

 

 
 

 




[1]  
See Humble Sand & Gravel, Inc. v. Gomez, 146 S.W.3d 170, 174 (Tex. 
2004) (occupational physician testifying about injury from exposure to silica 
dust); Exxon v. Makofski, 116 S.W.3d 176, 189 (Tex. App.—Houston [14th 
Dist.] 2003, pet. denied) (occupational physician used as an expert on benzene 
exposure); Daniels v. Lyondell-Citgo Refining Co., Ltd., 99 S.W.3d 722, 
726 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (evaluating an occupational 
physician’s ability to testify about benzene exposure); Twin City Fire Ins. 
Co. v. Grimes, 724 S.W.2d 956, 958 (Tex. App.—Tyler 1987, writ ref’d n.r.e.) 
(occupational physician used as an expert in a case about exposure to lead on 
the job site); Detar Hosp., Inc. v. Estrada, 694 S.W.2d 359, 363 (Tex. 
App.—Corpus Christi 1985, no writ) (ability to return to work after injury). 


[2]  
In Cresthaven Nursing Residence v. 
Freeman, 134 S.W.3d 214, 233–34 (Tex. App.—Amarillo
2003, no pet.), 
the court held a doctor practicing occupational medicine was qualified to give 
expert testimony regarding a nursing home patient who suffered from a urinary 
tract infection.  In reaching its conclusion, the court evaluated the 
doctor’s experience with the particular condition at issue.  See id. 
at 233.  The doctor was not precluded from testifying about the urinary 
infection and the patient’s cause of death simply because he practiced 
occupational medicine at the time.  Id. at 233–34.  The court 
found the expert qualified because the standards of care he described applied to 
any physician who treated patients with the same illness or injury.  See 
id.  In this case, Dr. Winters states in his expert report that since 
becoming an doctor of occupational medicine, he has treated patients suffering 
from decubitus ulcers and trained others on their prevention.