Affirmed and Opinion filed August 11,
2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-10-01144-CV



Randolph A.
Lopez, M.D., Appellant 

v.

Johanna Brown, Appellee 



On Appeal from
the 11th District Court

Harris County, Texas

Trial Court
Cause No. 2010-16803



 

OPINION 

In this accelerated interlocutory appeal, appellant
Randolph A. Lopez, M.D. challenges the trial court’s denial of his second
motion to dismiss based on an alleged untimely-filed and insufficient second
expert report in a medical malpractice suit.  We affirm.

BACKGROUND

Dr. Lopez operated on one of Joanna Brown’s fingers
in November 2008.  Brown sued Dr. Lopez in March 2010, alleging medical
malpractice and claiming damages resulting from Dr. Lopez’s alleged negligence
in performing the surgery.[1] 
Dr. Lopez answered with a general denial.  Brown timely filed an expert report
prepared by William C. Pederson, M.D., with his curriculum vitae attached (the
“Pederson report”).  See Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351(a) (West 2011).  Dr. Lopez objected to the sufficiency or
adequacy of the Pederson report and filed a motion to dismiss.[2]  Brown
responded, asserting that Pederson’s report was sufficient and, in the alternative,
if the trial court found the report deficient, requested a 30-day extension in
which to file an amended report.  

The trial court heard Dr. Lopez’s motion to dismiss
on August 23, 2010.  No record was made of this hearing.  The trial court
signed (a) an order granting the 30-day extension on October 18, 2010 and (b)
an order denying Dr. Lopez’s first motion to dismiss on November 2, 2010.  The
order granting the 30-day extension has the following language crossed out: 
“The Court, having read the pleadings and considered the motion and response if
any, is of the opinion that the Plaintiff’s Expert Report of William C.
Pederson, M.D., dated July 7, 2010, is insufficient under CPRC § 74.341 because
elements of the Report are found deficient.”[3]

On October 5, 2010, Dr. Lopez filed a second motion
to dismiss.  In this motion, Dr. Lopez asserted that Brown had not complied
with the statutory 30-day extension to serve either an amended report from Dr. Pederson
or a report from a new expert.  See id. § 74.351(c).  This motion to
dismiss was set for an oral hearing in late October.  Meanwhile, on October 6,
2010, Brown filed and served an expert report from John J. Faillace, M.D., with
curriculum vitae attached (the “Faillace report”).  Dr. Lopez supplemented his
second motion to dismiss with objections to the Faillace report.  

The trial court heard Dr. Lopez’s second motion to
dismiss and objections to the Faillace report on October 25, 2010.  The trial
court overruled Dr. Lopez’s objections to the Faillace report and denied his
second motion to dismiss, signing an order to this effect on November 2, 2010. 
Dr. Lopez timely filed a notice of accelerated appeal from the denial of this
motion to dismiss on November 18, 2010. 

ANALYSIS

On appeal, Dr. Lopez asserts that the trial court
abused its discretion by (1) denying his second motion to dismiss because
the Faillace report was not timely filed, and (2) overruling his objections to
the Faillace report because it was not sufficient as to causation.  

A.        Standard of
Review and Applicable Law

A medical-malpractice plaintiff must timely serve on
each defendant or each defendant’s attorney one or more expert reports that set
out (1) the applicable standard of care, (2) the manner in which the
defendant’s care failed to satisfy that standard, and (3) the causal
relationship between the defendant’s failure and the injury, harm, or damages
claimed.  See id. § 74.351(a), (r)(6).  Generally, if the plaintiff
fails to serve an expert report within the statutory 120-day deadline, the
trial court must dismiss the lawsuit with prejudice.  See id. §
74.351(a), (b).  However, the trial court may grant one 30-day extension to the
claimant to cure a deficiency in a timely-filed report.  See id. §
74.351(c).  Where, as here, the claimant does not receive notice of the court’s
ruling granting the extension until after the 120-day deadline has passed, “the
30-day extension shall run from the date the plaintiff first received
the notice.”  Id. (emphasis added).

We review a trial court’s denial of a motion to
dismiss under section 74.351 for abuse of discretion.  Am. Transitional Care
Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 875 (Tex. 2001); Group
v. Vicento, 164 S.W.3d 724, 727 (Tex. App.—Houston [14th Dist.] 2005, pet.
denied).  A trial court abuses its discretion if it acts in an arbitrary or
unreasonable manner without reference to any guiding rules or principles.  Larson
v. Downing, 197 S.W.3d 303, 304-05 (Tex. 2006) (per curiam); Mem’l
Hermann Healthcare Sys. v. Burrell, 230 S.W.3d 755, 757 (Tex. App.—Houston
[14th Dist.] 2007, no pet.).  When reviewing a matter committed to the
discretion of the trial court, a court of appeals may not substitute its
judgment for that of the trial court.  Bowie Mem’l Hosp. v. Wright, 79
S.W.3d 48, 52 (Tex. 2002) (per curiam).

B.        Timeliness of
Faillace Report

In his first issue, Dr. Lopez asserts that the
Faillace report was untimely because it was not served within 30 days following
the August 23, 2010 hearing on the Pederson report.  He contends that the plain
language of the statute requires that this extension begins running from the
date the plaintiff first received notice.  See Tex. Civ. Prac. &
Rem. Code Ann. § 74.351(c).  We agree that the plain language of the statute
provides that the 30-day extension runs from the date the plaintiff first
received notice of the court’s granting of the extension.  See id.  

However, Dr. Lopez has not established that Brown
received notice of the trial court’s grant of the extension on August 23, 2010
because, as noted above, no record of this hearing was taken.  During the October
25, 2010 hearing on the adequacy of the Faillace report, the trial court
recalled having granted Brown a 30-day extension to “clean-up” the Pederson
report if she so desired.  Even if the judge’s oral statement of recollection
could be considered the functional equivalent of the record of the actual
hearing itself, the oral pronouncement from the bench is inadequate to
constitute notice of a 30-day extension under section 74.351(c).  Section
51.014 of the Civil Practice & Remedies Code provides that “an appeal may
not be taken from an order granting an extension under Section 74.351.” 
Id. § 51.014(a)(9) (West 2008) (emphasis added).  Accordingly, we
conclude that the notice provided for in section 74.351(c) must be in the form
of a written order,[4]
rather than a trial court’s mere oral pronouncement from the bench.  Cf.
Constancio v. Bray, 266 S.W.3d 149, 160 n.4 (Tex. App.—Austin 2008, no
pet.) (“The statute plainly provides that when notice of the court’s order
granting an extension is received by a plaintiff outside of the 120-day period
for serving reports, the 30 days runs from the date the plaintiff receives
notice of the court’s order granting the extension.” (emphasis added)). 
This requirement eliminates any confusion created by a trial court’s erroneous
oral statements such as occurred here and clearly establishes the starting date
for the 30-day extension provided by section 74.351(c). [5]

In sum, the only conclusive evidence in our record reflecting
the date that Brown received notice of the trial court’s decision to grant the
extension is the trial court’s order signed on October 18, 2010.  Because this
order was signed after Brown filed the Faillace report, we conclude that this
report was timely.  Accordingly, we overrule Dr. Lopez’s first issue. 

C.        Adequacy of
Faillace Report

Dr. Lopez asserts in his second issue that the
Faillace report “is insufficient to identify the causal nexus between Dr.
Lopez’s alleged negligence and each of [Brown]’s claims for damages set forth
in her Original Petition.”  In his report, Dr. Faillace stated in pertinent
part as follows:

Multiple clinic follow-up notes
indicate Ms. Brown’s post operative course was marked with pain much greater
than expected, if the surgery had been successful.  On January 13th, 2009 she
was noted to have areas of necrosis to the grafts and drainage not felt to be
infection. . . .  On February 23rd, 2009 Dr. Lopez’s entire exam
note is, “closing defect no purulence nail curling” and his plan was for Ms.
Brown to follow up in six months.  On March 23rd, 2009 she returned to Dr.
Lopez with exposed bone.  He scheduled further surgery to resect bone and
obtain coverage.

She cancelled this surgery and
sought treatment with Dr. Mark Henry.  He then referred her to Dr. Pederson in
San Antonio who then performed a complete sympathectomy in the wrist and hand. 
After this she improved greatly.

Although his experience and
training may have suggested a digital sympathectomy alone is sufficient for a
typical Raynaud’s with an isolated digit involved, when Dr. Lopez got the
results of the MRA, he should have planned a more thorough sympathectomy such
as was done later by Dr. Pederson.  Ms. Brown’s case is complicated by the
scleroderma and [she] was having symptoms throughout the whole hand.  Having
exhausted the non-surgical intervention, the standard of care would be to
perform a complete sympathectomy, not the isolated digital one performed by Dr.
Lopez. . . .  It was NOT the correct procedure for this
patient.  As such, the standard of care was NOT met.

Such a limited sympathectomy
failed to improve her circulation and in this respect, being the wrong
procedure, is the proximate cause of Ms. Brown’s progression of symptoms,
partial loss of digits, and difficulty in prevention/clearing infection.  By performing
an inadequate surgery initially she required several more surgeries. 
Additionally the skin grafting procedure was so poorly performed that a second
harvest needed to be taken from the wrist.  These were doomed to failure as
there was not adequate reperfusion from the original procedure, the isolated
digital sympathectomy.  There also appears to be some inconsistencies in the
Brown Hand [C]enter’s records but this may just be due to poor record keeping.

In summary, as a fellowship trauma
hand surgeon I am experienced with Ms. Brown’s conditions and the difficult
nature of successful treatment.  I have performed a complete sympathectomy in
Raynaud’s patients with success.  Based on my training and experience, I am
familiar with the standard care in treating these patients.  Dr. Lopez did not
meet the standard of care in treating Ms. Brown.  This failure resulted in a protracted
and painful course as well as greater partial loss of digits.  She only got
releif and resolution after a complete sympathectomy and distal amputation. . . .

Dr. Faillace details the
injuries sustained by Brown while under the care and supervision of Dr. Lopez. 
He specifically links Dr. Lopez’s deviation from the applicable standard of
care to Brown’s pain as noted in Brown’s medical records, the existence of
necrosis in her fingers and hands, and her partial loss of fingers on her
dominant hand.  Dr. Faillace’s report further links the requirement of
additional surgeries to the fact that Dr. Lopez performed an improper and inappropriate
initial procedure on Brown.  His report provides a fair summary of the damages
attributable to Dr. Lopez’s deviation from the standard of care required by
section 74.351(r)(6).  See Tex. Civ. Prac. & Rem. Code Ann. §
74.351(r)(6) (defining an “expert report” as a written report by an expert
providing a fair summary of the expert’s opinion regarding the applicable
standard of care, the manner in which the care rendered by the physician failed
to meet the standards, and the causal relationship between that failure and the
injury, harm, or damages claimed).

Furthermore, under section 74.351(a), the obligation
to serve an expert report meeting section 74.351(r)(6)’s requirements exists
with respect to “each physician or health care provider against whom a
liability claim is asserted.”  Id. § 74.351(a).  The word “claim” is
defined to mean “a health care liability claim.”  Id. § 74.351(r)(2). 
The phrase “health care liability claim” is defined as “a cause of action
against a . . . physician for treatment, lack of treatment, or other claimed
departure from accepted standards of medical care . . . .”  Id. §
74.001(a)(13).  In this context, the term “cause of action” refers to
underlying facts giving rise to one or more bases for suing.  See In re
Jorden, 249 S.W.3d 416, 421-22 (Tex. 2008) (orig. proceeding).    

We have previously
examined the statutory language and determined that as long as the claimant
timely serves an expert report that adequately addresses at least one liability
theory against a defendant health care provider, the suit can proceed without
the need for every liability theory to be addressed in the report.  Baylor
Coll. of Med. v. Pokluda, 283 S.W.3d 110, 123 n.3 (Tex. App.—Houston [14th
Dist.] 2009, no pet.) (declining to address adequacy of report concerning
pre-surgery breaches of standard of care when expert report adequately
addressed breaches occurring during surgery); see also McGraw-Wall v.
Giardino, No. 14-10-00838-CV, 2011 WL 1419608, at *4 (Tex. App.—Houston
[14th Dist.] Apr. 14, 2011, pet. filed) (mem. op.) (“Therefore, although the
amended expert report here does not address all of Giardino’s alleged damages, it
adequately addresses at least one liability theory and that satisfies the
statutory requirements.”); Arboretum Nursing and Rehab. Ctr. of Winnie, Inc.
v. Isaacks, No. 14-07-00895-CV, 2008 WL 2130446, at *6 (Tex. App.—Houston
[14th Dist.] May 22, 2008, no pet.) (mem. op.) (holding expert report was
sufficient despite the fact that the report did not address each detail of the
plaintiff’s petition).[6] 
In short, although the Faillace report does not address all of Brown’s alleged
damages, it adequately addresses at least one liability theory, which satisfies
the statutory requirements.  Accordingly, we overrule Dr. Lopez’s second issue.

CONCLUSION

Under these circumstances, Dr. Lopez has failed to
establish reversible error.  Accordingly, we have overruled Dr. Lopez’s
challenges to the trial court’s order.  Having overruled each of Dr. Lopez’s
issues, we affirm the trial court’s order denying his second motion to dismiss.

                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

Panel
consists of Chief Justice Hedges and Justices Seymore and Boyce.









[1]
Brown originally sued Dr. Lopez and the Brown Medical Center, Inc. f/k/a
Surgeon’s Management, Inc. a/k/a Brown Hand Center (“Brown Medical”).  She
subsequently non-suited her claims against Brown Medical, and Dr. Lopez
remained the only defendant in the case. 





[2]
We note that, at the time Brown filed the Pederson report, Brown Medical had
not yet released copies of her medical records to her.





[3]
A trial court may grant a 30-day extension only if it finds the report
deficient.  See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c). 
However, the issue of the trial court’s erroneous granting of a 30-day
extension to a report it allegedly found sufficient is not before us in this
appeal.





[4]
Further, a judgment or order that is rendered in writing and signed by the trial
judge becomes the official judgment of the court.  E.g., Harrington
v. Harrington, 742 S.W.2d 722, 724 (Tex. App.—Houston [1st Dist.] 1987, no
writ).  Recitals in a judgment or signed order of the court control over
conflicting recitals in either the reporter’s or clerk’s record.  See
Hamilton v. Empire Gas & Fuel Co., 134 Tex. 377, 384–85, 110 S.W.2d
561, 566 (1937) (“[D]ocket entries, affidavits, and other like evidence, can
neither change nor enlarge judgments or orders as entered in the minutes of the
court.”);  In re JDN Real Estate–McKinney L.P., 211 S.W.3d 907, 914 n.3
(Tex. App.—Dallas 2006, orig. proceeding) (holding that written order
controlled over conflicting oral pronouncement); Harrington, 742 S.W.2d
at 724 (resolving conflict between judgment and docket entry in favor of
judgment).





[5]
See footnote 3, supra.  





[6]
Although this court has reached this conclusion, we note that the Supreme Court
of Texas has not directly decided whether an expert report must set out each
liability theory within a cause of action, and there is a split of authority
amongst the intermediate courts of appeals regarding this matter.  See
Certified EMS, Inc. v. Potts, —S.W.3d—, —, No. 01-10-00106-CV, 2011 WL
1938264, at *11 (Tex. App.—Houston [1st Dist.] May 19, 2011, no pet. h.) (op.
on reh’g) (noting split of authority and collecting cases establishing split).